Charles P. Hectus, Appellee, v. Chicago Transit Authority, Appellant.

Gen. No. 46,219.

440

Opinion filed November 3, 1954. Rehearing denied November 26, 1954. Released for publication December 9, 1954.

THOMAS C. STRACHAN, JR., JAMES O. DWIGHT, ERWIN H. WRIGHT, and GEORGE C. BUNGE, all of Chicago, for appellant; ARTHUR J. DONOVAN, of Chicago, of counsel.

JOSEPH BARBERA, of Chicago, for appellee.

MR. JUSTICE LEWE delivered the opinion of the court.
Defendant appeals from a judgment in the sum of $35,000 entered on the verdict of a jury in an action by plaintiff to recover damages for personal injuries sus-

tained by him as a result of being struck by a streetcar. Defendant's motions for directed verdict and judgment notwithstanding the verdict were overruled.

As grounds for reversal defendant contends (1) that plaintiff was a trespasser; (2) that, even if plaintiff's status was that of an invitee, he failed to establish his own due care and negligence on the part of the defendant; (3) that plaintiff's testimony at the trial is without probative force and should be disregarded because it was in conflict with his testimony on his pretrial deposition; (4) that the court committed reversible error in instructing the jury regarding plaintiff's intoxication; and (5) that the verdict and judgment were against the manifest weight of the evidence.

There was evidence that: On August 25, 1948, plaintiff, aged twenty, accompanied by two friends, spent several hours in the evening bowling. About midnight plaintiff and his companions left the bowling alley and went to a nearby tavern where they remained until 1:00 o'clock a. m. During this entire period plaintiff had consumed three or four glasses of whiskey and about eighteen bottles of beer.

After leaving the tavern plaintiff boarded a northbound Ashland Avenue streetcar and alighted at the intersection of Madison Street where he got on a westbound Madison-Street car. At the western terminus of the Madison-Street line at Austin Boulevard. the westbound cars turn into a loop. The loop lies within a rectangular area 185 feet long and 105 feet wide located at the northeast corner of the intersection of Madison Street and Austin Boulevard in the City of Chicago. After clearing the sidewalk on the north side of Madison Street the westbound streetcars stop to discharge their passengers. At this point the westbound cars face north. After discharging their passengers the cars travel westward around the loop until they face south. While facing south the cars stop at

the north sidewalk of Madison Street for the purpose of receiving eastbound passengers. There are four streetcar tracks in the loop.

Immediately north of the north sidewalk on Madison Street there is a frame building housing a restaurant known as "The Salt Box." Back of the restaurant there is a radio tower and directly north of the radio tower there is a men's washroom with an entrance on the north side. All of these structures are encircled by streetcar tracks.

After alighting from the westbound streetcar in the loop at about 1:30 a. m. on August 26th plaintiff walked west to the washroom where he remained for about five minutes. Upon leaving the washroom he proceeded east toward a wall along the east boundary of the loop area. Plaintiff got across "the first set of tracks" and as he was walking across the westerly tracks in front of a standing westbound streetcar it suddenly started without warning and knocked him down. This streetcar followed the one on which plaintiff had been riding as a passenger into the loop.

After the impact plaintiff was found lying parallel with and about eight or ten inches from the right side of the streetcar alongside of the front trucks and about 8 feet from the front of the streetcar. His head was toward the rear. At the time of the occurrence the interior of the streetcar which struck plaintiff was illuminated. The headlight, as well as two cowl lights on the front of the car, was burning. The headlight illuminates an area of twenty or thirty feet in front of the car. That portion of the loop area where the streetcar was standing immediately before the accident was lighted by street lamps on Madison Street.

The motorman of the streetcar involved in the accident, one Corcoran, testified, "It was not pitch dark there. You could see somebody if they were walking there. I did not see Mr. Hectus [plaintiff] that night

before I saw him crawling away from under the car." According to plaintiff's testimony he was a foot or two in front of the standing streetcar when he stepped onto the tracks and the right front of the streetcar came in contact with him. Plaintiff admits that at the time of the occurrence he was intoxicated.

With respect to defendant's contention that plaintiff was a trespasser, it argues that plaintiff was roaming about on a part of defendant's premises where he had no right to be. This argument is based on the theory that the men's washroom in the loop was intended for the exclusive use of defendant's employees. The evidence on this point is conflicting. There was evidence, however, tending to prove that the washroom was used by the public. A police officer testified that he used the men's washroom on many occasions at night for a period of two years prior to the accident; that he saw persons not employed by the defendant use it, and that he never found the door locked. Motorman Corcoran admitted that he "gave lots of guys" other than employees of the defendant "favors by opening the door for them." Another motorman stated that the washroom was used by streetcar passengers and other people.

██ ██ Whether plaintiff was an invitee presented a question of fact for the jury to determine. We think the evidence is ample to warrant a finding that the plaintiff was an invitee. See *Ellguth v. Blackstone Hotel, Inc.*, 408 Ill. 343; *Larson v. Illinois Cent. Ry. Co.*, 2 Ill.App.2d 102.

██ ██ Defendant next contends that it was entitled to a directed verdict for the reason that plaintiff failed to maintain his burden of proof. In considering defendant's motion the question presented is whether there is any evidence which, taken in its aspects most favorable to plaintiff, tends to prove plaintiff's cause of action. (*Berg v. New York Cent. R. Co.*, 391 Ill. 52.)

This court cannot reweigh the evidence. We only look at that which is favorable to the plaintiff. (*Thomas v. Douglas,* 1 Ill.App.2d 261, 117 N.E.2d 417; *George v. E. I. du Pont de Nemours & Co.,* 348 Ill. App. 495.)

Although plaintiff's testimony is uncorroborated we do not think that it is contrary to the physical facts. Nor is his testimony inherently improbable. Plaintiff's presence alongside of the front trucks of the streetcar where the crew said they found him is consistent with his version of the occurrence that he was struck by the right front of the streetcar. A pedestrian crossing in front of a streetcar can reasonably assume that it will not start without some kind of warning. In these circumstances the jury could find that defendant's motorman did not exercise due care, first, in failing to see the plaintiff and, second, in failing to give plaintiff some warning before starting the streetcar. In any event, the question of plaintiff's contributory negligence and defendant's negligence presented an issue of fact for the jury. (*Schneiderman v. Interstate Transit Lines,* 331 Ill. App. 143, affirmed 401 Ill. 172.) See also *Ney v. Yellow Cab Co.,* 2 Ill.2d 74.

The record shows that shortly after plaintiff was injured he was taken to the West Suburban Hospital where in conversation with Dr. Monroe he told the doctor that he did not recall any of the circumstances of the accident; that about two weeks after the accident plaintiff gave a signed statement to an investigator employed by the defendant, in which he stated that, "All I can recall at this time is that I had been run over by a streetcar and heard the compressor on the car. Then I blacked out . . . I cannot possibly reconstruct the details of the accident." The record further shows that in his pretrial deposition, taken more than two years after the occurrence, plaintiff stated that when he got off the Madison-Street car he started for the fence along the east boundary of the loop, in-

tending "to sit down," and that he remembered he was "under the streetcar and a lot of people around there."

Defendant maintains that plaintiff's sworn testimony in his pretrial deposition is a judicial admission and that his contradictory testimony on the trial is of no probative force. Plaintiff testified at the trial that the events with respect to the occurrence came to him for the first time after he had listened to a discovery deposition given by Corcoran, the motorman, on September 14, 1950.

██ ██ Impeachment of a witness does not render his testimony nugatory but goes only to its credibility and weight. (*Fuhry v. Chicago City Ry. Co.*, 239 Ill. 548; *Godair v. Ham Nat. Bk.*, 225 Ill. 572; *Acquaviva v. Madison County Mut. Automobile Ins. Co.*, 285 Ill. App. 431. In *Godair v. Ham Nat. Bk.*, 225 Ill. 572, the court said, at page 577, "It has uniformly been held by this court that the maxim *falsus in uno falsus in omnibus* should only be applied in cases where a witness has knowingly and willfully given false testimony." In the instant case plaintiff's testimony has not been contradicted by the testimony of other witnesses upon a material matter If he made a false statement through mistake or misapprehension the jury could not disregard his testimony altogether.

Criticism is leveled at plaintiff's given instruction 23 which reads, "The fact that plaintiff was intoxicated at the time of the occurrence in question cannot be used as a defense in this case unless it appears that said intoxicated condition of plaintiff proximately contributed to cause the accident in question and the injury sustained by him." Defendant says that this instruction improperly shifts the burden of proof and tells the jury in effect that they are entitled to ignore the admitted fact of voluntary intoxication unless defendant can affirmatively show that it contributed to **plaintiff's injuries.**

446

 Voluntary intoxication will not excuse a person from such care as may be reasonably expected from one who is sober. (*South Chicago City Ry. Co. v. Dufresne,* 200 Ill. 456.) To the same effect see *Wilcke v. Henrotin,* 241 Ill. 169. Nor does voluntary intoxication constitute negligence in law. The jury were properly instructed with respect to contributory negligence and voluntary intoxication by defendant's given instructions numbered 20 and 24. One of the defenses relied on by defendant was plaintiff's contributory negligence. In our view the instruction complained of is not in direct conflict with defendant's instructions. While we do not approve of the form of this instruction because it is incomplete, we think that it was rendered harmless by defendant's instructions. See *McMillian v. McLane,* 338 Ill. App. 514. Reading the instructions as a series we are of the opinion that the instruction complained of does not constitute ground for reversal. (*Aldridge v. Morris,* 337 Ill. App. 369.)

 Finally defendant contends that the verdict is against the manifest weight of the evidence for the reason that plaintiff has impeached himself by prior statement and testimony under oath on his pretrial deposition and that versions of the occurrence given by plaintiff and Corcoran, the motorman of the streetcar which struck plaintiff, cannot be reconciled. Corcoran testified that he did not see the plaintiff until after he was injured. This negative testimony is not corroborated by other witnesses. Nor did any witness testify that plaintiff did not pass in front of the standing streetcar.

 In *Lindroth v. Walgreen Co.,* 407 Ill. 121, at page 132, the court in adverting to *Lavender v. Kurn,* 327 U. S. 645, 90 L. Ed. 421, 66 S. Ct. 740, said: "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on

the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear." To the same effect see *Tennant v. Peoria and Pekin Union Ry. Co.*, 321 U. S. 29. That the jury could have drawn different inferences, as defendant suggests, does not justify this court in setting aside the verdict.

 It is uncontroverted that the plaintiff suffered severe and permanent injuries. The front part of the left foot was removed. He lost the muscle substance of the back side of his right leg. The normal weight-bearing surface of the bottom of the right foot, including the toe, is gone, causing plaintiff to limp. He has virtually no ankle motion. In view of the nature of the injuries we cannot say that the verdict is excessive.

For the reasons stated, the judgment is affirmed.

*Judgment affirmed.*

KILEY, P. J. and FEINBERG, J., concur.