FARMER, et al. *v.* STATE FOR USE OF RUSSELL.

No. 39630          April 25, 1955          79 So. 2d 528

*G. L. Lucas, Sams & Jolly,* Columbus, for appellants.

*L. W. Brown,* Starkville, for appellee.

HALL, J.

Mrs. Velma Russell brought this suit in the name of the State for her use against Charles Emerson Farmer, United States Fidelity and Guaranty Company, and Russell Scoffield, seeking damages for the death of her husband, Charles F. Russell. Farmer was Sheriff of Lowndes County, the guaranty company was surety on his official bond in the amount of $20,000.00, and Scoffield was alleged to be an employee of the Sheriff in charge of prisoners, the common denomination of his po-

sition being that of jailer. It was charged that Russell was committed to the Lowndes County jail on June 11, 1953, to await the action of the grand jury of the county on a felony charge, and thereby became a prisoner under the care and protection of the defendants Farmer and Scoffield and so remained until November 24, 1953, when he was sent to a hospital, where he died December 2, 1953. It was charged that when he became a prisoner Russell was suffering from internal ulcers in or near the stomach, which condition required medical aid and proper and wholesome food in order that his condition would not become worse, and that notwithstanding many requests for such attention the defendants Farmer and Scoffield failed, neglected, refused and declined to provide medical and surgical aid or the proper wholesome food for such condition and as a result thereof Russell's condition became greatly aggravated and worse and complications arose which caused his death. The bond was for $20,000.00, the suit was for $60,000.00, and the verdict was for $5,000. There was a demurrer to the declaration which was overruled, and this action of the lower court is one of the errors assigned.

It is contended that this was a suit ex contractu as against Farmer and his surety to the extent of $20,000.00, and ex delicto against Farmer to the extent of $40,000.00 over and above the amount of his bond, and ex delicto against Scoffield for the whole $60,000.00 demanded, and that for this reason the lower court erred in overruling the demurrer. We think this question was settled contrary to appellants' contention in the case of State for the use of Russell v. McRae, et al., 169 Miss. 169, 178, 152 So. 826, where, in a similar situation, this Court said:

"The next point advanced in that the declaration joins two causes of action in one count, one in tort and the other in contract. Section 2889, Code of 1930, (now Section 4034, Code of 1942) requires that the bonds of all public officials shall be made payable to the State and

shall be put in suit in the name of the State for the use and benefit of the person injured thereby. The real basis of the cause of action in the case at bar is the alleged tort of the defendant officer, for which the defendant indemnity company stands as a mere surety. The bond is conditioned for the faithful discharge of all the duties and trusts imposed upon the principal by reason of his election as a member of the board of supervisors, and the surety's liability is measured by that of the principal for torts or acts done by him either by virtue or under color of his office, and there was no error in proceeding against the principal and the surety in one count to recover for the alleged tort liability.''

The principal contention of appellants is that they were entitled to a directed verdict. The proof for plaintiff shows conclusively that deceased was suffering with the ulcerated condition, and that this eventually brought about his death. The proof further shows that he was confined in jail from June 11 to November 24 when he appeared in court and his condition was apparently so serious that the circuit judge ordered him sent to a hospital, which was done, and he died there on December 2 from complications induced by his ulcerated condition. The prisoner needed medical attention while he was confined in jail and none was furnished to him. It is shown by the record that, until the prisoner reached such a serious state, this attention could have been rendered in jail. The deceased's wife from time to time brought him certain foods which were recommended by the doctor before he was confined in jail. There is a dispute in the evidence as to whether medical attention was requested of the sheriff and jailer. The jury, by its verdict, found that such requests were made but that they were ignored and no doctor was called to see deceased while he was in jail, notwithstanding the fact that the county had a jail physician who was paid for his services out of the county treasury. We think, under the whole record, that the issue was for the determination

of a jury, and that the verdict is not against the great weight of the evidence.

It is argued that the sheriff had no authority to send the prisoner to a hospital, and that for this reason he was entitled to a peremptory charge, but the record shows that treatment could have been administered while the prisoner was in jail. He was furnished no treatment for his serious condition while in jail.

It is also argued that it was optional with the sheriff as to whether he would call a doctor for the prisoner and that consequently he was acting in a judicial capacity in failing to see that the prisoner received medical attention. This argument is based on the provisions of Section 4262, Code of 1942, to the effect that when a person confined in jail shall be in need of medical or surgical aid, the sheriff shall immediately examine the condition of such prisoner, and, "if he is of the opinion that the prisoner needs such aid, he shall call in a physician or surgeon to attend him * * * ." According to the proof in this case neither the sheriff nor the jailer ever examined the prisoner to form an opinion as to whether he did or did not need medical aid. According to plaintiff's proof they were repeatedly advised of his condition and requested to get a doctor for him, but they did not examine him. There is no showing in the record that the failure to call a doctor was because of any opinion, judicial or otherwise, formed by the sheriff or jailer that the prisoner did not need medical care.

It is also argued that deceased's own contributory negligence brought about or contributed to his death and that for this reason the directed verdict should have been granted. We have repeatedly held that contributory negligence is an affirmative defense which must be specially pleaded. The appellants did not plead it or request any instruction on it and it is apparently an afterthought raised for the first time in this Court.

One of the best reasoned cases we have found on the law of this case is State of Indiana, ex rel. Tyler v. Gobin, et al., 94 Fed. 48, 50, wherein the Court said:

"The sheriff is bound to the exercise of due care and diligence in keeping possession of property levied on by virtue of his office, so as to preserve the lien unimpaired. He leaves the property at his peril in the possession of the debtor. He is bound to take ordinary care of property levied on, to prevent deterioration or destruction, and, if he neglects to do so, is liable for the resulting injury. He must exercise ordinary care in moving goods and in selecting a fit place for their deposit. He must use due care to feed and water livestock seized by him by virtue of a lawful writ. 22 Am. & Eng. Enc. Law, 549, and authorities cited. For a failure to use ordinary care in the cases above mentioned, to which many more might be added, he and his sureties are responsible on his official bond. This liability grows out of a breach of duty to exercise care imposed upon him by law in respect of property seized by virtue of his office. If the law imposes a duty of care in respect of animals and goods which he has taken into his possession by virtue of his office, why should not the law impose the duty of care upon him in respect of human beings who are in his custody by virtue of his office? Is a helpless prisoner in the custody of a sheriff less entitled to his care than a bale of goods or a dumb beast? The law is not subject to any such reproach. When a sheriff, by virtue of his office, has arrested and imprisoned a human being, he is bound to exercise ordinary and reasonable care, under the circumstances of each particular case, for the preservation of his life and health. This duty of care is one owing by him to the person in his custody by virtue of his office, and for a breach of such duty he and his sureties are responsible in damages on his official bond. Asher v. Cabell, 1 C. C. A. 693, 50 Fed. 818, and 2 U. S. App. 159; Hixon v. Cupp (Okla.), 49 Pac. 227."

The authorities are not unanimous in upholding liability in a case like this but they are numerous. See Clark v. Kelly, 101 W. Va. 650, 133 S. E. 365, 48 A. L. R. 799; Annotations 14 A. L. R. 2d 353, et seq. Mississippi seems to have heretofore aligned itself with those jurisdictions which hold liability of the sheriff and his surety in a case of this nature. In State, ex rel. Trigg v. West, et al., 171 Miss. 203, 157 So. 81, there was involved the propriety of the action of the lower court in sustaining a demurrer to a declaration which failed to charge that the prisoner did not have medical attention and wholesome food while confined by the sheriff, and this Court held that the demurrer was properly sustained, and in effect held that if the declaration had contained such allegations it would have stated a good cause of action. In the case at bar the declaration contained the averments which were omitted in the Trigg case and the proof supported them.

Appellants also complain of the granting and refusing of some of the instructions. Without prolonging this opinion by discussing them in detail, we simply say that we have carefully considered them, and in our opinion the lower court committed no error in the respects complained of and that the law was correctly laid down in the instructions granted. The judgment of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.