EMILY M. DEZORT, Adm'rx of the Estate of Frank J. Dezort, Jr., Deceased, Plaintiff-Appellant, *v.* THE VILLAGE OF HINSDALE *et al.*, Defendants-Appellees.

Second District (1st Division) No. 74-69

Opinion filed February 6, 1976.

704

George M. Avgeris, of Hinsdale, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Plaintiff, the administratrix of the estate of her husband Frank J. Dezort, filed a wrongful death action alleging that the defendant Village and its named police officers were responsible for the suicide of her husband while he was a prisoner in the Hinsdale Village jail. She appeals from the order of the trial court granting defendants' motion for summary judgment and denying her motion for summary judgment and her motion *in limine* seeking to strike the issue of contributory negligence.

She contends that the defendants were under a duty to exercise reasonable care for the decedent while he was a prisoner and that their failure to do so was the proximate cause of his suicide. She also argues

that the decedent cannot be charged with contributory negligence since self-injury was the very risk to be guarded against by the defendants when they were confronted with a person with known and expressed suicidal tendencies. She further contends that, in any event, contributory negligence was not proved as a matter of law and that defendants did not have quasi-judicial immunity.

The facts are admitted for the purpose of testing the order granting summary judgment to the defendants. On or about the 21st of December, 1971, Frank J. Dezort, Jr., the decedent, age 43, arrived at his home at about 3:30 a.m. in an intoxicated, highly emotional and severely depressed state. He expressed fears of committing suicide and requested that the police be called to protect him from himself. A member of Dezort's family called the police at approximately 4:50 a.m. During the time the officers were present in the house, Dezort kept asking them to shoot or kill him. He stated that if the officers did not shoot him, he would take their guns and do it himself. On two occasions in the home Dezort tried to take the gun of one of the patrolmen. The first attempt was unsuccessful; on the second attempt he was able to get the gun out of the officer's holster but was forced to drop it by the officer. Dezort was then handcuffed and searched, taken into custody, and transported to the Hinsdale jail. When he left his house he was wearing an undershirt, a pair of trousers, shoes, and socks. A complaint was filed charging him with disorderly conduct.

Dezort was searched again at the jail house; and cigarettes, matches, his wallet and some loose coins were taken from him. He was placed in a cell alone at about 5:20 a.m. The sergeant in charge told the arresting officer to conduct all checks of the decedent because he "looks strange." However, no physical or mental examination was made.

At approximately 7:05 a.m. Dezort was found dead, hanging by the neck from his belt.

Defendants' motion for a summary judgment, which was allowed, stated that the defendants had no legal duty to protect Dezort from self-inflicted injury and that the action was barred by the decedent's contributory negligence. Defendants also raised the additional defense of quasi-judicial immunity of the officers. Plaintiff's motion for summary judgment, which was denied, claimed that there was a mandatory statutory duty applicable to the case and that it had been breached.

■■ We must first decide whether defendants owed plaintiff's decedent a legal duty to use reasonable care to prevent his suicide. Whether the law imposes upon a particular defendant a duty to exercise reasonable care toward plaintiff or the class of persons of which plaintiff is a member is a question of law to be determined by the court. (*Mieher v.*

*Brown,* 54 Ill. 2d 539, 541 (1973); *Barnes v. Washington,* 56 Ill. 2d 22, 26 (1973); *Cunis v. Brennan,* 56 Ill. 2d 372, 374 (1974).) The determination of the question of duty requires weighing such factors as the foreseeability of the occurrence, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequence of placing the burden upon the defendant. *Boyd v. Racine Currency Exchange, Inc.,* 56 Ill. 2d 95; 99 (1973). See also W. Prosser, Law of Torts §53, at 324-27 (4th ed. 1971).

That a prisoner who is alone in a cell is likely under some circumstances to injure himself or to commit suicide would appear to be reasonably foreseeable. The magnitude of the burden of guarding against self-inflicted injuries and the general policy considerations underlying the placing of the burden upon those in charge of prisoners, however, presents greater difficulties. The issues do not appear to have been specifically addressed previously in Illinois.

However, several Illinois cases and statutes have been cited as giving some direction to the resolution of these questions. In *Bush v. Babb,* 23 Ill. App. 2d 285 (1959), the prisoner's father brought an action alleging that he was required to support his invalid son because the county sheriff had allegedly violated a statute (Ill. Rev. Stat. 1959, ch. 75, pars. 2, 19) requiring the warden to furnish medical aid for all prisoners under his charge. The court held that the sheriff's duty was to the public and not to individuals who were inmates of the county jail under the statute and that if he failed in his duty he could be subjected to the statutory penalty but not to a private suit (23 Ill. App. 2d 285, 290). In *Kelly v. Ogilvie,* 64 Ill. App. 2d 144 (1965), Kelly had filed a complaint alleging that while he was a prisoner in the county jail pending trial he was injured by a fellow inmate who, he alleged, was permitted to enter his cell by a trusty. Section 16 of the Sheriff's Act (Ill. Rev. Stat. 1963, ch. 125, §16), relied upon by the plaintiff, provided for a civil remedy in the case of a failure to obey an order of the court. The appellate court in affirming the dismissal of the complaint held that the order entered in the case (to keep the accused safely until final judgment of the court) imposed only a public duty on the sheriff. The court relied on *Bush v. Babb.* On review the supreme court in *Kelly v. Ogilvie,* 35 Ill. 2d 297 (1966), affirmed, however, on the basis that the complaint had joined the wrong superior under the doctrine of *respondeat superior* (the sheriff instead of the public body which was the County of Cook) and had failed to allege that the defendants knew or should have known of the facts which presented an unreasonable risk to the prisoner. The court held that a sheriff or warden could not be held liable on the basis of plaintiff's allegations that they are insurers of the safety of a prisoner

placed in their custody even when a "tier clerk" or "barn boss" system is in force.[1]

In the case before us plaintiff argues that not only is there a suggestion in *Kelly v. Ogilvie* that a public body and its subordinates may in a properly pleaded case be found to have a duty to protect a prisoner in custody from injury but that the apparently contrary language in *Bush v. Babb*, 23 Ill. App. 2d 285 (1959), has been expressly negated by statute. Plaintiff cites section 4—105 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, par. 4—105) which provides, as material here:

"* * * but a public employee, and the local public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know from his observation that the prisoner is in need of immediate medical care and fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners."

Plaintiff also relies on certain police department rules of the Village of Hinsdale enacted pursuant to the authority granted under the Illinois Municipal Code (see Ill. Rev. Stat. 1973, ch. 24, pars. 11—1—2, 11—3—1) which regulations as material here provide:

"Chapter 11. Procedures. Criminal arrest. * * * Before locking up a male prisoner, an officer should make a careful search and take from him everything which could be used in effecting an escape or to injure himself, including necktie, belt and shoestrings. * * *

* * *

Chapter 3. General Duties of Commanding Officers. Rule 3.12. Sick or Injured Prisoners. The Commanding Officer shall not permit confinement of any sick, injured * * * prisoner in the jail cell. He shall provide for an examination of such person by a physician and if necessary have him removed to the nearest hospital for treatment, taking appropriate security measures. * * *"

Plaintiff also asks us to note that at the time of the occurrence in the

---

[1] Although the supreme court found it unnecessary to consider the correctness of the appellate court's ruling as applied to a sheriff since the plaintiff apparently acquiesced in it, the court at page 300 of the opinion referred to Annots., 14 A.L.R. 2d 35[3] (1950); 61 A.L.R. 569 (1929); 50 A.L.R. 268 (1927); 46 A.L.R. 94 (1927); and the note in 1961 Ill. Law Forum 505. We note that in 14 A.L.R. 2d 353, 354, there is the comment: "The majority of courts hold that the sheriff or other officer, owes a duty to the prisoner to keep him safely and to protect him from unnecessary harm and it has also been held that the officer must exercise reasonable and ordinary care for the life and health of the prisoner."

case before us under section 55a.1 of the Civil Administrative Code of Illinois (Ill. Rev. Stat. 1971, ch. 127, par. 55a.1—now incorporated in Ill. Rev. Stat. 1973, ch. 38, par. 1003—2—2), the Department of Corrections was empowered to establish minimum standards for the operation of county and municipal jails for the treatment of inmates with respect to their health and safety and that pursuant to the statute certain municipal jail and lockup standards were promulgated in January, 1971, by the Bureau of Detention Facilities and Jail Standards of the Illinois Department of Corrections. These included:

> "III Minimum Municipal Jail and Lockup Standards. A. The primary purpose of lockups: * * * (3) No prisoner with a known history of mental disorder or mental defect, or who shows evidence of such condition, shall be housed in any municipal jail or lockup. In the event such type prisoner is received, he shall be afforded protective custody and individualized supervision until such time as his transfer to another facility. Such prisoner shall immediately be referred for appropriate professional study and diagnosis. If a finding of mental illness or mental disorder is made, the Chief of Police or the Chief Jailer shall immediately notify the appropriate authorities regarding the mental condition so that transfer can be made.
>
> * * *
>
> D. Supervision * * * (3) Any prisoner who, upon admittance or while confined, is unconscious, injured or shows of [sic] physical or mental distress shall be immediately examined by a physician—who shall have full power to order his removal to a hospital, if necessary. A record of all physician's visits and treatment shall be kept."

The failure to comply with self-imposed regulations does not necessarily impose upon municipal bodies and their employees a legal duty to prisoners nor does the failure to comply with such regulations make a case of prima facie liability to a prisoner or his estate. The regulations are helpful, however, in illustrating that it has been considered feasible as a matter of custom to undertake certain obligations for the safety and welfare of prisoners. While custom is not regarded as conclusive it suggests a body of knowledge of which the defendant should be aware. See *Darling v. Charleston Community Memorial Hospital,* 33 Ill. 2d 326, 332 (1965). See also Restatement (Second) of Torts §§ 286, 288, 295A (1965).

We conclude that the better reasoning supports the rule that the jailer owes a general duty of due care to his prisoner. We are in accord

with the often quoted statement of the court in *Indiana ex rel. Tyler v. Gobin*, 94 F. 48 (D. Ind. 1899), where the court stated on page 50:

> "If the law imposes a duty of care in respect of animals and goods which he has taken into his possession by virtue of his office, why should not the law impose the duty of care upon him in respect of human beings who are in his custody by virtue of his office? Is a helpless prisoner in the custody of a sheriff less entitled to his care than a bale of goods or a dumb beast?"

See also *Thomas v. Williams*, 105 Ga. App. 321, 124 S.E.2d 409 (1962); *Kendrick v. Adamson*, 51 Ga. App. 402, 180 S.E. 647 (1935); *Barlow v. City of New Orleans*, 257 La. 91, 241 So. 2d 501 (1970); *Farmer v. State*, 224 Miss. 96, 79 So. 2d 528 (1955); *Smith v. Miller*, 241 Iowa 625, 40 N.W.2d 597 (1950); *Roberts v. State*, 307 N.E.2d 501, 505 (Ind. App. 1974); *Justice v. Rose*, 102 Ohio App. 482, 144 N.E.2d 303 (Ohio App. 1957).

■■ It appears to us that the suggestion that law enforcement officers owe no general duty of care to those who have been arrested and incarcerated, but not convicted of any crime, is contrary to sound public policy.

The conception of the duty, however, does not dispose of the case. We must also determine whether this duty encompasses the risk of self-injury or self-destruction by the prisoner.

Plaintiff has argued that the risk that a prisoner may commit suicide in jail, based on the experience of these happenings, is generally foreseeable. She contends that in the particular circumstances established by the pleadings and the agreed facts in this case, the duty to guard against the possibility of suicide does not create an unreasonable burden. As stated in these general terms, we agree.

We do not agree, however, with plaintiff's further argument that section 4—105 of the Tort Immunity Act, which requires a public employee to take reasonable action to summon medical care, is the equivalent of establishing a mandatory duty on jailers and other public employees to furnish psychiatric care to prisoners. We perceive a difference between the duties of hospitals and their employees who are equipped to deal with persons with express suicidal tendencies and therefore can be reasonably asked to undertake a considerable responsibility for the well being of the patients in their care (see *Pietrucha v. Grant Hospital*, 447 F.2d 1029 (7th Cir. 1971); *cf. Sneider v. Hyatt Corp.* 390 F. Supp. 976 (N.D. Ga. 1975)) and the duties which may fairly be imposed upon police officers and jailers. The latter are not equipped to recognize and analyze severe emotional problems of per-

sons charged with crimes and particularly those who are in a drunken state.

■■ We instead define the duty of the defendants and those similarly situated by the standard that they are required to exercise ordinary and reasonable care for the preservation of their prisoner's health and life under the circumstances of the particular case. (*State of Indiana v. Gobin*, 94 F. 48 (D. Ind. 1899); *Farmer v. State*, 224 Miss. 96, 79 So. 2d 528, 531 (1955).) In this case whether defendants have failed to act in accordance with this standard would properly be a jury question.

We must then consider whether or not contributory negligence would be an appropriate issue. The trial court in denying the motion *in limine* necessarily must have considered that the plaintiff was required to prove that the decedent was in the exercise of reasonable care. It then apparently concluded that the decedent was guilty of contributory negligence as a matter of law.

Defendants argue that a person who becomes voluntarily intoxicated to the extent that such intoxication causes his suicide is contributorily negligent as a matter of law. Plaintiff responds that the nature of defendants' duty is to exercise reasonable care to prevent the suicide, that therefore there could be no suicide except for defendants' negligence and thus no contributory negligence. We find this reasoning tortured. Contributory negligence of the deceased is a bar to recovery under the Wrongful Death Act (*Maki v. Frelk*, 40 Ill. 2d 193 (1968)), and we see no reason to deny its application in the wrongful death action before us. Plaintiff has argued that *Pietrucha v. Grant Hospital*, 447 F.2d 1029 (7th Cir. 1971) held that contributory negligence was not a proper issue in the case against the hospital arising from the suicide of its patient. We find nothing in the *Pietrucha* opinion to support that conclusion.

■■■ We do, however, disagree with defendants' argument that voluntary intoxication of the decedent is contributory negligence as a matter of law. In a wrongful death action the decedent may be guilty of contributory negligence as a matter of law only when the evidence of due care is so insufficient that all reasonable minds in the exercise of fair and honest judgment would be compelled to reach the conclusion that there was a failure to exercise due care. (*Pennington v. McLean*, 16 Ill. 2d 577, 582 (1959).) While it has been said that voluntary intoxication will not excuse a person from exercising such care as may reasonably be expected from one who is sober (*McCormick v. Kopman*, 23 Ill. App. 2d 189, 197 (1959)), it has also been said that voluntary intoxication does not constitute negligence in law (*Hectus v. Chicago Transit Authority*, 3 Ill. App. 2d 439, 447 (1954)), and that intoxication is not negli-

gence per se but simply a circumstance to be weighed by the jury in its determination of the issue of due care (*French v. City of Springfield*, 5 Ill. App. 3d 368, 376 (1972)).

■■ The finding that decedent voluntarily became intoxicated and while in that condition engaged in an act which, objectively, could be characterized as voluntary and which proximately caused the death does not show contributory negligence as a matter of law. The relevant inquiry is whether the decedent in his condition was incapable of exercising due care for his own safety and whether the persons charged with responsibility toward him knew or reasonably should have known of his incapability. (See *Barlow v. City of New Orleans*, 257 La. 91, 102, 240 So. 2d 501, 505 (1970).) In *Barlow* the court stated:

> "While it is true, as a general rule, that voluntary intoxication does not relieve one from negligent conduct or serve to relax the requirement which is imposed upon a person to exercise due care for his own safety * * * this rule is subject to the exception that, where the person is in such a helpless state of intoxication that he is unable to take care of himself and is, as in this case, confined under arrest, recovery for the injuries he has received emanating from a danger to which he is exposed, which is attributable partially to his unconscious act, but against which the defendant should have protected him, is not barred by contributory negligence." (257 La. 91, 102, 240 So. 2d 501, 505.)

(See also *Thomas v. Williams*, 105 Ga. App. 321, 124 S.E.2d 409, 414 (1962); *Kimbrell v. American Indemnity Co.*, 56 So. 2d 880, 881 (La. App. 1952).)[2] We therefore conclude that the court erred in holding that the plaintiff's intestate was guilty of contributory negligence as a matter of law. This issue could not properly have been disposed of by summary judgment since it raises a question of fact for the jury.

■■ Defendants also argue that they are immune from liability. Defendants did not plead immunity in their answer to the plaintiff's complaint nor in their original motion for summary judgment. They pleaded it for the first time in an addendum to their own motion for summary judgment in which they claimed the defense of the common law doctrine of quasi-judicial immunity. A review of the transcript of the hear-

---

[2] It should be noted that in *Kimbrell* the court applied the rule governing carriers and intoxicated passengers to a case involving a prisoner. In this connection we note the series of cases in Illinois involving the responsibility of common carriers who knowingly accept an intoxicated passenger. They are charged with knowledge in the appropriate case that the passenger is unable to exercise due care for his own safety. See *Burke v. Chicago & North Western Ry. Co.*, 108 Ill. App. 565, 578 (1902); *Panor v. Northwestern Elevated R.R. Co.*, 228 Ill. App. 162, 178 (1923). See also *Chevalier v. Chicago Transit Authority*, 338 Ill. App. 119, 129 (1949).

ing on the cross motions for summary judgment and the plaintiff's motion *in limine* indicates that the trial judge did not reach the issue of immunity but granted the defendants' motion for summary judgment on the basis of other arguments raised by the defendants. Although we recognize the role of the appellate court is to determine the correctness of the order entered by the trial court, rather than the correctness of the trial court's reasoning or the grounds for the order (see *Stigler v. City of Chicago*, 48 Ill. 2d 20 (1971)), we do not believe that the facts contained in the record before us are sufficient to sustain the trial court's order for summary judgment on the basis of the defendants' alleged immunity.[3]

We therefore reverse the judgment and remand the cause to the trial court with directions to allow the parties to amend their pleadings, if desired, to permit proper consideration of the defense of immunity and to otherwise proceed consistent with this opinion. While plaintiff has asked that we grant her motion for summary judgment, we do not find it appropriate to do so in view of factual questions raised in the pleadings.

Reversed and remanded with directions.

GUILD and HALLETT, JJ., concur.

---

[3] In addition, we note that the question of the defendants' immunity here may well be governed by provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, §1—101, *et seq.* See *Hennigs v. Centreville Township*, 56 Ill. 2d 151 (1973), and *Ten Eicken v. Johnson*, 1 Ill. App. 3d 165 (1971) which were not cited or argued by the parties, rather than the common law. Although under section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, §43(4)) it may not be necessary to cite the Act to raise the defense, we do not believe the facts presently before the court are adequate to resolve the immunity issue.