Justice Breyer
delivered the opinion of the Court.
The question is whether we can imply the existence of an Eighth Amendment-based damages action (a Bivens action) against employees of a privately operated federal prison. See generally Bivens v. Six Unknown Fed. Narcotics Agents, 403 U. S. 388, 389 (1971) (“[Violation of [the Fourth Amendment] by a federal agent . . . gives rise to a cause of action for damages” against a Federal Government em­ployee). Because we believe that in the circumstances present here state tort law authorizes adequate alternative damages actions — actions that provide both significant de­terrence and compensation — we cannot do so. See Wilkie v. Robbins, 551 U. S. 537, 550 (2007) (no Bivens action *121 where “alternative, existing” processes provide adequate protection).
I
Richard Lee Pollard was a prisoner at a federal facility operated by a private company, the Wackenhut Corrections Corporation. In 2002 he filed a pro se complaint in federal court against several Wackenhut employees, who (now) include a security officer, a food-services supervisor, and sev­eral members of the medical staff. As the Federal Magis­trate Judge interpreted Pollard’s complaint, he claimed that these employees had deprived him of adequate medical care, had thereby violated the Eighth Amendment’s prohibition against “cruel and unusual” punishment, and had caused him injury. He sought damages.
Pollard said that a year earlier he had slipped on a cart left in the doorway of the prison’s butcher shop. The prison medical staff took X rays, thought he might have fractured both elbows, brought him to an outside clinic for further or­thopedic evaluation, and subsequently arranged for surgery. In particular, Pollard claimed:
(1) Despite his having told a prison guard that he could not extend his arm, the guard forced him to put on a jump­suit (to travel to the outside clinic), causing him “the most excruciating pain,” App. 32;
(2) During several visits to the outside clinic, prison guards made Pollard wear arm restraints that were con­nected in a way that caused him continued pain;
(3) Prison medical (and other) personnel failed to follow the outside clinic’s instructions to put Pollard’s left elbow in a posterior splint, failed to provide necessary physical ther­apy, and failed to conduct necessary studies, including nerve conduction studies;
(4) At times when Pollard’s arms were in casts or similarly disabled, prison officials failed to make alternative arrange­ments for him to receive meals, with the result that (to avoid “being humiliated” in the general food service area, id., at *122 35) Pollard had to auction off personal items to obtain funds to buy food at the commissary;
(5) Prison officials deprived him of basic hygienic care to the point where he could not bathe for two weeks;
(6) Prison medical staff provided him with insufficient medicine, to the point where he was in pain and could not sleep; and
(7) Prison officials forced him to return to work before his injuries had healed.
After concluding that the Eighth Amendment did not pro­vide for a Bivens action against a privately managed prison’s personnel, the Magistrate Judge recommended that the Dis­trict Court dismiss Pollard’s complaint. The District Court did so. But ■ on appeal the Ninth Circuit found that the Eighth Amendment provided Pollard with a Bivens action, and it reversed the District Court. Pollard v. The GEO Group, Inc., 607 F. 3d 583, 603, as amended, 629 F. 3d 843, 868 (2010).
The defendants sought certiorari. And, in light of a split among the Courts of Appeals, we granted the petition. Compare ibid, (finding an Eighth Amendment Bivens action where prisoner sues employees of a privately operated fed­eral prison) with, e. g., Alba v. Montford, 517 F. 3d 1249, 1254-1256 (CA11 2008) (no Bivens action available), and Holly v.. Scott, 434 F. 3d 287, 288 (CA4 2006) (same).
HH 1 — 1
Recently, m Wilkie v. Robbins, supra, we rejected a claim that the Fifth Amendment impliedly authorized a Bivens ac­tion that would permit landowners to obtain damages from government officials who unconstitutionally interfere with their exercise of property rights. After reviewing the Court’s earlier Bivens cases, the Court stated:
“[T]he decision whether to recognize a Bivens remedy may require two steps. In the first place, there is the question whether any alternative, existing process for *123 protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding rem­edy in damages. . . . But even in the absence of an al­ternative, a Bivens remedy is a subject of judgment: ‘the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.’ ” 551 U. S., at 550 (quoting Bush v. Lucas, 462 U. S. 367, 378 (1983)).
These standards seek to reflect and to reconcile the Court’s reasoning set forth in earlier cases. In Bivens itself the Court held that the Fourth Amendment implicitly author­ized a court to order federal agents to pay damages to a person injured by the agents’ violation of the Amendment’s constitutional strictures. 403 U. S., at 389. The Court noted that “ ‘where federally protected rights have been in­vaded,’” courts can “‘adjust their remedies so as to grant the necessary relief.’” Id., at 392 (quoting Bell v. Hood, 327 U. S. 678, 684 (1946)). See also Correctional Services Corp. v. Malesko, 534 U. S. 61, 66 (2001) (“authority to imply a new constitutional tort” anchored within general “‘aris­ing under’” jurisdiction). It pointed out that the Fourth Amendment prohibited, among other things, conduct that state law might permit (such as the conduct at issue in that very case). Bivens, 403 U. S., at 392-393. It added that the interests protected on the one hand by state “trespass” and “invasion of privacy” laws and on the other hand by the Fourth Amendment’s guarantees “may be inconsistent or even hostile.” Id., at 394. It stated that “[historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.” Id., at 395. And it found “no special factors counselling hesitation in the ab­sence of affirmative action by Congress.” Id., at 396.
*124 In Davis v. Passman, 442 U. S. 228 (1979), the Court con­sidered a former congressional employee’s claim for damages suffered as a result of her employer’s unconstitutional dis­crimination based on gender. The Court found a damages action implicit in the Fifth Amendment’s Due Process Clause. Id., at 248-249. In doing so, the Court emphasized the unavailability of “other alternative forms of judicial re­lief.” Id., at 245. And the Court noted that there was “no evidence” that Congress (or the Constitution) intended to foreclose such a remedy. Id., at 247.
In Carlson v. Green, 446 U. S. 14 (1980), the Court consid­ered a claim for damages brought by the estate of a federal prisoner who (the estate said) had died as the result of Gov­ernment officials’ “deliberate] indifference] ” to his medical needs — indifference that violated the Eighth Amendment. Id., at 16, n. 1, 17 (citing Estelle v. Gamble, 429 U. S. 97 (1976)). The Court implied an action for damages from the Eighth Amendment. 446 U. S., at 17-18. It noted that state law offered the particular plaintiff no meaningful dam­ages remedy. Id., at 17, n. 4. Although the estate might have brought a damages claim under the Federal Tort Claims Act, the defendant in any such lawsuit was the em­ployer, namely, the United States, not the individual officers who had committed the violation. Id., at 21. A damages remedy against an individual officer, the Court added, would prove a more effective deterrent. Ibid. And, rather than leave compensation to the “vagaries” of state tort law, a fed­eral Bivens action would provide “uniform rules.” 446 U. S., at 23.
Since Carlson, the Court has had to decide in several dif­ferent instances whether to imply a Bivens action. And in each instance it has decided against the existence of such an action. These instances include:
(1) A federal employee’s claim that his federal employer dismissed him in violation of the First Amendment, Bush, supra, at 386-388 (congressionally created federal civil serv­ice procedures provide meaningful redress);
*125 (2) A claim by military personnel that military superiors violated various constitutional provisions, Chappell v. Wal­lace, 462 U. S. 296, 298-300 (1983) (special factors related to the military counsel against implying a Bivens action), see also United States v. Stanley, 483 U. S. 669, 683-684 (1987) (similar);
(3) A claim by recipients of Social Security disability bene­fits that benefits had been denied in violation of the Fifth Amendment, Schweiker v. Chilicky, 487 U. S. 412, 414, 425 (1988) (elaborate administrative scheme provides meaningful alternative remedy);
(4) A former bank employee’s suit against a federal bank­ing agency, claiming that he lost his job due to agency action that violated the Fifth Amendment’s Due Process Clause, FDIC v. Meyer, 510 U. S. 471, 484-486 (1994) (no Bivens ac­tions against government agencies rather than particular in­dividuals who act unconstitutionally);
(5) A prisoner’s Eighth Amendment-based suit against a private corporation that managed a federal prison, Malesko, 534 U. S., at 70-73 (to permit suit against the employer-­corporation would risk skewing relevant incentives; at the same time, the ability of a prisoner to bring state tort law damages action against private individual defendants means that the prisoner does not “lack effective remedies,” id., at 72).
Although the Court, in reaching its decisions, has not al­ways similarly emphasized the same aspects of the cases, Wilkie fairly summarizes the basic considerations that un­derlie those decisions. 551 U. S., at 550. We consequently apply its approach here. And we conclude that Pollard can­not assert a Bivens claim.
That is primarily because Pollard’s Eighth Amendment claim focuses upon a kind of conduct that typically falls within the scope of traditional state tort law. And in the case of a privately employed defendant, state tort law pro­vides an “alternative, existing process” capable of protecting the constitutional interests at stake. 551 U. S., at 550. The *126 existence of that alternative here constitutes a “convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.” Ibid. Our rea­soning is best understood if we set forth and explain why we reject Pollard’s arguments to the contrary.
) — i J-H ) — I
Pollard (together with supporting amici) asks us to imply a Bivens action for four basic reasons — none of which we find convincing. First, Pollard argues that this Court has already decided in Carlson that a federal prisoner may bring an Eighth Amendment-based Bivens action against prison personnel; and we need do no more than simply apply Carl­son’s holding here. Carlson, however, was a case in which a federal prisoner sought damages from personnel employed by the government, not personnel employed by a private firm. 446 U. S., at 25. And for present purposes that fact— of employment status — makes a critical difference.
For one thing, the potential existence of an adequate “al­ternative, existing process” differs dramatically in the two sets of cases. Prisoners ordinarily cannot bring state-law tort actions against employees of the Federal Government. See 28 U. S. C. §§2671, 2679(b)(1) (Westfall Act) (substituting United States as defendant in tort action against federal em­ployee); Osborn v. Haley, 549 U. S. 225, 238,241 (2007) (West-­fall Act immunizes federal employee through removal and substitution of United States as defendant). But prisoners ordinarily can bring state-law tort actions against employees of a private firm. Infra, at 128-129.
For another thing, the Court specifically rejected Justice Stevens’ somewhat similar suggestion in his dissenting opin­ion in Malesko, namely, that a prisoner’s suit against a pri­vate prison-management firm should fall within Carlson’s earlier holding because such a firm, like a federal employee, is a “federal agent.” Compare Malesko, 534 U. S., at 70, and n. 4 (majority opinion), with id., at 76-77, 82 (dissenting opin­ *127 ion). In rejecting the dissent’s suggestion, the Court ex­plained that the context in Malesko was “fundamentally dif­ferent” from the contexts at issue in earlier cases, including Carlson. 534 U. S., at 70. That difference, the Court said, reflected in part the nature of the defendant, i. e., a corporate employer rather than an individual employee, ibid., and in part reflected the existence of alternative “effective” state tort remedies, id., at 72-73. This last-mentioned factor makes it difficult to square Pollard’s argument with Males-­ko’s reasoning.
Second, Pollard argues that, because of the “vagaries” of state tort law, Carlson, 446 U. S., at 23, we should consider only whether federal law provides adequate alternative rem­edies. See id., at 18-19, 23 (considering adequacy of federal remedies); see also, e. g., Schweiker, supra, at 423 (similar); Bush, 462 U. S., at 378 (similar). But cf. Carlson, supra, at 24 (“ ‘[R]elevant Indiana statute would not permit survival of the [state tort] claim’ ”). This argument flounders, how­ever, on the fact that the Court rejected it in Malesko. Compare 534 U. S., at 72-73 (majority opinion), with id., at 79-80 (Stevens, J., dissenting) (making similar suggestion). State tort law, after all, can help to deter constitutional viola­tions as well as to provide compensation to a violation’s vic­tim. And it is consequently unsurprising that several cases have considered the adequacy or inadequacy of state-law remedies when determining whether to imply a Bivens rem­edy. See, e. g., Bivens, 403 U. S., at 394 (state tort law “in­consistent or even hostile” to Fourth Amendment); Davis, 442 U. S., at 245, n. 23 (noting no state-law remedy available); cf. Malesko, supra, at 70 (noting that the Court has implied Bivens action only where any alternative remedy against in­dividual officers was “nonexistent” or where plaintiff “lacked any alternative remedy” at all).
Third, Pollard argues that state tort law does not provide remedies adequate to protect the constitutional interests at issue here. Pollard’s claim, however, is a claim for physical *128 or related emotional harm suffered as a result of aggravated instances of the kind of conduct that state tort law typically forbids. That claim arose in California, where state tort law provides for ordinary negligence actions, for actions based upon “want of ordinary care or skill,” for actions for “negli­gent failure to diagnose or treat,” and for actions based upon the failure of one with a custodial duty to care for another to protect that other from “‘unreasonable risk of physical harm.’” See Cal. Civ. Code Ann. §§ 1714(a), 1714.8(a) (West 2009 and Supp. 2012); Giraldo v. Department of Corrections and Rehabilitation, 168 Cal. App. 4th 231, 248, 85 Cal. Rptr. 3d 371, 384 (2008) (quoting Haworth v. State, 60 Haw. 557, 563, 592 R 2d 820, 824 (1979)). California courts have spe­cifically applied this law to jailers, including private opera­tors of prisons. Giraldo, supra, at 252, 85 Cal. Rptr. 3d, at 387 (“[JQailers owe prisoners a duty of care to protect them from foreseeable harm”); see also Lawson v. Superior Ct, 180 Cal. App. 4th 1372, 1389-1390, 1397, 103 Cal. Rptr. 3d 834, 849-850, 855 (2010) (same).
Moreover, California’s tort law basically reflects general principles of tort law present, as far as we can tell, in the law of every State. See Restatement (Second) of Torts §§314A(4), 320 (1963-1964). We have found specific author­ity indicating that state law imposes general tort duties of reasonable care (including medical care) on prison employees in every one of the eight States where privately managed secure federal facilities are currently located. See Dept, of Justice, Federal Bureau of Prisons, Weekly Population Report (Dec 22, 2011), http://www.bop.gov/locations/weekly_ report.jsp (listing States) (as visited Dec. 29, 2011, and avail­able in Clerk of Court’s case file); Thomas v. Williams, 105 Ga. App. 321, 326, 124 S. E. 2d 409, 412-413 (1962) (In Geor­gia, “ ‘sheriff owes to a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him’ ”); Giraldo, supra, at 248, *129 85 Cal. Rptr. 3d, at 384 (California, same); Farmer v. State ex rel. Russell, 224 Miss. 96, 105, 79 So. 2d 528, 531 (1955) (Mississippi, same); Doe v. Albuquerque, 96 N. M. 433, 438, 631 P. 2d 728, 733 (App. 1981) (New Mexico, same); Multiple Claimants v. North Carolina Dept, of Health and Human Servs., 176 N. C. App. 278, 280, 626 S. E. 2d 666, 668 (2006) (North Carolina, same); Clemets v. Heston, 20 Ohio App. 3d 132, 135-136, 485 N. E. 2d 287, 291 (1985) (Ohio, same); Wil­liams v. Syed, 782 A. 2d 1090,1093-1094 (Pa. Commw. 2001) (Pennsylvania, same); Salazar v. Collins, 255 S. W. 3d 191, 198-200 (Tex. App. 2008) (Texas, same); see also Schellenger, 14 A. L. R. 2d 353, § 2[a] (Later Casé Service and Supp. 2011) (same). But cf. Miss. Code Ann. § ll-46-9(l)(m) (Supp. 2011) (statute forbidding such actions against state — though not private — employees); N. Y. Corree. Law Ann. §§ 24 (West 2003), 121 (2011 Cum. Supp.) (similar).
We note, as Pollard points out, that state tort law may sometimes prove less generous than would a Bivens action, say, by capping damages, see Cal. Civ. Code Ann. § 3333.2(b) (West 1997), or by forbidding recovery for emotional suffer­ing unconnected with physical harm, see 629 F. 3d, at 864, or by imposing procedural obstacles, say, initially requiring the use of expert administrative panels in medical malpractice cases, see, e.g., Me. Rev. Stat. Ann., Tit. 24, §2853 (Supp. 2010); Mass. Gen. Laws, ch. 231, § 60B (West 2010). But we cannot find in this fact sufficient basis to determine state law inadequate.
State-law remedies and a potential Bivens remedy need not be perfectly congruent. See Bush, supra, at 388 (admin­istrative remedies adequate even though they “do not pro­vide complete relief”). Indeed, federal law as well as state law contains limitations. Prisoners bringing federal law­suits, for example, ordinarily may not seek damages for men­tal or emotional injury unconnected with physical injury. See 42 U. S. C. § 1997e(e). And Bivens actions, even if more generous to plaintiffs in some respects, may be less generous *130 in others. For example, to show an Eighth Amendment vio­lation a prisoner must typically show that a defendant acted, not just negligently, but with “deliberate indifference.” Farmer v. Brennan, 511 U. S. 825,834 (1994). And a Bivens plaintiff, unlike a state tort law plaintiff, normally could not apply principles of respondeat superior and thereby obtain recovery from a defendant’s potentially deep-pocketed em­ployer. See Ashcroft v. Iqbal, 556 U. S. 662, 676 (2009).
Rather, in principle, the question is whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the Eighth Amend­ment while also providing roughly similar compensation to victims of violations. The features of the two kinds of actions just mentioned suggest that, in practice, the answer to this question is “yes.” And we have found nothing here to convince us to the contrary.
Fourth, Pollard argues that there “may” be similar kinds of-Eighth Amendment claims that state tort law does not cover. But Pollard does not convincingly show that there are such cases. Compare Brief for Respondent Pollard 32 (questioning the availability of state tort remedies for “pris­oners [who] suffer attacks by other inmates, preventable sui­cides, or the denial of heat, ventilation or movement”) with Giraldo, supra, at 248-249, 85 Cal. Rptr. 3d, at 384-385 (courts have long held that prison officials must protect, e. g., transgender inmate from foreseeable harm by other in­mates), and Restatement (Second) of Torts §§ 314A(4), 320.
Regardless, we concede that we cannot prove a negative or be totally certain that the features of state tort law rele­vant here will universally prove to be, or remain, as we have described them. Nonetheless, we are certain enough about the shape of present law as applied to the kind of case before us to leave different cases and different state laws to another day. That is to say, we can decide whether to imply a Bivens action in a case where an Eighth Amendment claim or state law differs significantly from those at issue here *131 when and if such a case arises. The possibility of such a different future case does not provide sufficient grounds for reaching a different conclusion here.
For these reasons, where, as here, a federal prisoner seeks damages from privately employed personnel working at a privately operated federal prison, where the conduct alleg­edly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law. We cannot imply a Bivens remedy in such a case.
The judgment of the Ninth Circuit is reversed.

So ordered.