631 P.2d 728

**John DOE, Plaintiff-Appellee,**

v.

**The CITY OF ALBUQUERQUE, Defendant-Appellant.**

**Christopher HOOTON, Plaintiff-Appellee,**

v.

**The CITY OF ALBUQUERQUE, Defendant-Appellant.**

**No. 4213.**

Court of Appeals of New Mexico.

April 14, 1981.

Rehearing denied May 4, 1981.

Steven H. Schiff, City Atty., Albuquerque, for defendant-appellant.

Ray M. Vargas, Albuquerque, for plaintiff-appellee Doe.

Dan A. McKinnon, III, Marron & McKinnon, Albuquerque, for plaintiff-appellee Hooton.

## OPINION

WALTERS, Judge.

The majority of a panel of the Court of Appeals (Walters, J., dissenting) previously held in this case that § 41–4–12 of the Tort Claims Act, N.M.S.A. 1978, prohibited recovery by injured jail inmates against negligent city law enforcement officers. The Supreme Court reversed, declaring that the governmental entity and its law enforcement officers, the city jailers, were not immune from suit for personal or bodily injury caused by the jailers' negligence. The cause was remanded to this Court for determination of other issues raised by the City in its appeal.

The facts of this case are fully recited in the Court of Appeals decision appearing in 19 N.M.S.B.B. 775 (1980) and in the opinion of the Supreme Court published at 20 N.M. S.B.B. 139, 95 N.M. 329, 622 P.2d 234 (1981).

Aside from the question of immunity now disposed of by the Supreme Court's opinion, the city claims it is entitled to a new trial because of errors committed in consolidating the cases for trial, denying a motion for directed verdict, refusing requested instructions, and excluding certain evidence. We discuss the claimed errors in order.

1. *Consolidation.*

■ Rule 42(a), N.M.R.Civ.P., permits consolidation when actions involve common questions of law or fact. Of course, each plaintiff would have to show discrete facts pertinent only to the event giving rise to his claim; nevertheless, the underlying common facts alleged were the same: plaintiffs had been imprisoned within weeks of each other in the Bernalillo County jail; the jail was under control and responsibility of the City; plaintiffs were seriously injured by other inmates while so jailed; the City was aware for a substantial period of time before the plaintiffs were assaulted and injured of the potential for injury to them. The common issue of law was whether the City was negligent in failing to provide adequate supervision and protection for plaintiffs' safety.

■ If there were questions common to both cases at the time consolidation was ordered, *Blumenthal v. Berkley Homes, Inc.*, 342 Mich. 36, 69 N.W.2d 183 (1955), the order is reviewable only if the court abused its discretion in entering the order. *Hanratty v. Middle Rio Grande Conservancy Dist.*, 82 N.M. 275, 480 P.2d 165 (1970). Defendant's argument that the jury could not assess the separate claims of the plaintiffs free from a prejudicial influence of evidence heard on the claim of the other plaintiff, is purely speculative. It presumes the jury was unable or refused to follow the detailed instructions. The only proof suggested to support the argument is the $23,000 difference in verdicts returned, which defendant describes as verdicts "reasonably close together." It argues that the "great disparity between the extent of injuries" suffered by the plaintiffs, and the difference in the periods of time over which the injuries were inflicted, call for a wider spread in the damages awarded.

■ There is no touchstone beyond the instructions given for measuring the damage amounts which juries, in the exercise of their judgments, award. *Baca v. Baca*, 81 N.M. 734, 472 P.2d 997 (Ct.App.1970). Reviewing courts do not disturb awards supported by evidence which is taken in its most favorable light, and which awards are not shown to be the result of passion, prejudice, sympathy, undue influence, or a mistaken measure of damages. *Samedan Oil Corp. v. Neeld*, 91 N.M. 599, 577 P.2d 1245 (1978). We see no defect in the evidence to support the verdicts; and we are led to no conviction that the awards are tainted by passion or other improper consideration that would support a belief that consolidation prejudiced the defendant. It was not error to do so.

## 2. *Directed verdict.*

The City states in its Brief-in-Chief that there was insufficient evidence to submit all of plaintiffs' theories of negligence to the jury. No reference to the transcript appears in this argument; no recitation of any evidence or testimony either to support the theories or to show the inadequacy of support, is made. The City concedes, however, that it "recognizes that this Honorable Court may disagree and find that there was substantial evidence of negligence as to one or more of the claims."

■ The factual and legal deficiencies in this argument are somewhat relieved by appellees' Answer Briefs, in which they attempt to guess at the basis of the City's complaint. The argument is then thoroughly presented by the City, as required by Rule 9, R.Civ.App.P., in its Reply Brief. The Reply Brief, of course, is not the place to outline, for the first time, the basis for arguing insufficient evidence; or to set forth the substance of the evidence on the issues attempted to be raised. Such a procedure forecloses a response from appellees, and leaves them with an argument directed only toward what they were able to surmise from the cryptic point stated in the Brief-in-Chief. The court will not search the record to determine whether appellant's Reply Brief arguments could be refuted, or whether the trial court committed error. *See Petty v. Williams*, 71 N.M. 338, 378 P.2d 376 (1963). Points of error not properly briefed or argued will not be considered, *State v. Riggsbee*, 85 N.M. 668, 515 P.2d 964 (1973); rather, we will indulge all presumptions in favor of the correctness of the

procedures in the trial court, including submission of plaintiffs' various negligence claims to the jury.

3. *Refusal of requested instructions.*

(a) Independent Intervening Cause.

■ The City contends it was entitled to its submitted U.J.I. 13.15 [U.J.I. 3.9 in 1981 revision] on this issue, but in its Brief-in-Chief we are not cited to a single item of evidence or transcript reference in support of its argument. This violates the appellate rules; we will not search the record to find evidence that would have justified submission of the instruction to the jury. *See City of Farmington v. Sandoval*, 90 N.M. 246, 561 P.2d 945 (Ct.App.1977).

(b) Contributory Negligence of Hooton.

According to the undisputed evidence, Hooton's jaw was broken about an hour after he was jailed following his arrest. During that hour Hooton was threatened, intimidated, assaulted and beaten. One of the dozen inmates in that cell held a blade at his throat, and threatened to "slit" Hooton if he tried to call for a guard. Another inmate told Hooton it didn't matter if he killed Hooton because "they weren't going to let him [the inmate] get out for at least twenty years anyway." Still another occupant of the cell told him he might be beaten all night long, and Hooton feared if he called for a guard, he "wouldn't make it . . . wouldn't see morning."

The City claims Hooton should have called for help before his jaw was broken, and his failure to do so was sufficient basis to justify a contributory negligence instruction against him.

■ Contributory negligence is usually an issue of fact to be determined by the jury, but when the evidence would not support such a finding it is error to submit the issue to the jury. *City of Belen v. Harrell*, 93 N.M. 601, 603 P.2d 711 (1979). U.J.I. Civ. 12.1 [U.J.I.Civ. 16.1 in 1981 revision] defines "negligence," in part, as a failure to do something "which a reasonably prudent person in the exercise of ordinary care would do in order to prevent injury to himself." U.J.I.Civ. 12.2 (then in effect), instructed that "[o]rdinary care is not an absolute term, but a relative one. In deciding whether ordinary care has been exercised, the conduct in question must be considered in the light of all the surrounding circumstances, as shown by the evidence."

■ Under the facts and circumstances of the immediate "gang" attack on Hooton, the relatively short time he was in the cell with his attackers, his well-founded fears for his life if he attempted to get help, we do not believe reasonable minds could differ on the correctness of the course Hooton chose in exercising ordinary care to prevent an even greater, more serious, and probably fatal injury to himself. Thus, as a matter of law, it was not error to refuse defendant's requested instructions. *Harrell, supra; see Sandoval v. Cortez*, 88 N.M. 170, 538 P.2d 1192 (Ct.App.1975).

(c) The City's Standard of Care.

■ Defendant urges that the jury should have been informed in the language of § 41–4–2, N.M.S.A. 1978, that a governmental entity's standard of care is circumscribed by the "financial limitations within which it must exercise authorized power, and discretion in determining the extent and nature of its activities." Such an instruction was tendered and refused. The City points to evidence that surveillance of the cells was insufficient because the jail director was without sufficient manpower. That, however, is the only evidence in the record to which we are referred regarding lack of precautions for prisoner safety, and it provides no evidence whatever on the cause for insufficient manpower. Without evidence on the issue of "financial limitations," defendant was not entitled to the requested instruction. *Archibeque v. Homrich*, 88 N.M. 527, 543 P.2d 820 (1975); *Garcia v. Barber's Super Markets, Inc.*, 81 N.M. 92, 463 P.2d 516 (Ct.App.1969).

4. *Exclusion of evidence.*

(a) Evidence of Custom and Usage.

The trial court refused to permit the City to inquire about customs and usages in oth-

er correctional institutions concerning attacks among the prisoner population.

The questions asked by the City, to which objections were sustained, leave no doubt that the effect of the answers sought would be to suggest that sexual and violent attacks between and among prisoners is a common, foreseeable occurrence in most jails and prisons. The City argues that evidence of "similar problems" in the other facilities, and how they were handled, was relevant to showing "what an ordinary prudent man would do under similar circumstances."

It is not clear whether the City intended to show the conduct of plaintiffs or the jail director as the acts of a "prudent man" under similar circumstances, but we assume it argues that the director should have done no more than is done in other institutions where such unrest and violence may be expected. We are unaware of any rule of law that excuses a wrongdoer's negligence simply because that type of negligence is prevalent among others in the same position. We feel, instead, that doing nothing in the face of anticipated problems and with awareness of similar difficulties in other institutions under the same circumstances—which was the direction taken by the City's questioning and admitted in the City's brief to be the purpose of the questioning—hardly shows the conduct of a "prudent" person or entity.

■ If there is a failure of prison officials to provide for the safety of prisoners, generally, as the City attempted to show, the practice amounts to wholesale disregard of duty by those charged with protection of prisoners from assaults by other confined inmates. Even though other jurisdictions have held otherwise, it is the law in New Mexico that when a governmental entity through its agents, by virtue of its law enforcement powers, has arrested and imprisoned a human being, it is bound to exercise ordinary and reasonable care, under the circumstances, for the preservation of his life and health. *Harrell, supra.* The duty of care is one owing to a person in custody by virtue of such powers, and for a

breach of that duty, the custodial entity is responsible in damages. *Farmer v. State,* 224 Miss. 96, 79 So.2d 528 (1955). *See also Matthews v. District of Columbia,* 387 A.2d 731 (D.C.App.1978); Restatement (Second), Torts, § 320; Annots. 41 A.L.R.3rd 1021, et seq. (1972), and 14 A.L.R.2d 353, et seq. (1950).

■ The stated purpose of the inquiries did not relate to a valid defense; the questions were not relevant on any other basis to any issue being litigated. The objections, therefore, were properly sustained. N.M.R.Evid. 401, 402, N.M.S.A. 1978.

(b) "Rap sheet" of other inmates.

After Hooton was removed from the tank in which he was assaulted, he was confined in another cell with several other prisoners. The City attempted to introduce the rap sheets of the other prisoners in Hooton's second cell. On appeal, it says that the rap sheets would have shown the similarity in the criminal backgrounds of the prisoners of both cells, thus permitting the inference that foreseeability of violence in the first cell could not be based on the prisoners' types of criminal character alone.

Hooton in his Answer Brief has not challenged defendant's failure to apprise the trial court of a relevant purpose for which the rap sheets were offered. The record discloses that the only reason mentioned for offering the rap sheets was that the City intended to show that the second cell to which Hooton was assigned was not, on dates before and after his assignment, "confined to housing individuals accused of misdemeanor offenses." The relevancy of that fact was never explained; and the trial court found that the criminal character of the occupants of the second cell on dates earlier and later than the day on which Hooton was transferred there was likewise irrelevant. The reason for admission urged by the City on appeal was not articulated at trial.

■ Error of the trial court in excluding evidence, if it is error, must be sufficiently called to the trial court's attention to give

the court an opportunity to correct its ruling. That was not done in this case; an offer of proof was not made; the City did not seek clarification of the court's ruling if it felt the evidence should not have been excluded. The alleged error was not preserved. *Williams v. Yellow Checker Cab Co.*, 77 N.M. 747, 427 P.2d 261 (1967).

Even had the rap sheets been introduced, what would they have proved or disproved with regard to the City's foreseeability of danger in placing Hooton in the first cell where he was assaulted? If similarity in criminal backgrounds was the only ground for alerting jail officials to the probability of injury to Hooton or other prisoners, and the rap sheets would have shown that similarity, the logical deduction would be that, as *the City* indicates in its brief, "there was no safe place anywhere in the jail." Certainly exclusion of that kind of evidence could not prejudice the City when it is on trial for negligently failing to provide for the safety of prisoners in its custody.

We find no reversible error in the trial below. The verdicts returned in favor of plaintiffs Doe and Hooton are affirmed.

IT IS SO ORDERED.

HERNANDEZ, C. J., and ANDREWS, J., concur.