# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-023

Filing Date: June 19, 2014

Docket No. 33,604

**MARTIN RAMIREZ, a/k/a**
**RICHARD G. SANCHEZ, JR.,**

      **Petitioner-Respondent,**

**v.**

**STATE OF NEW MEXICO,**

      **Respondent-Petitioner.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Alan M. Malott, District Judge**

Gary K. King, Attorney General
William H. Lazar, Assistant Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Petitioner


Dane Eric Hannum
Albuquerque, NM

for Respondent


Rebecca Kitson Law
Rebecca Kitson
Albuquerque, NM

Christopher N. Lasch
University of Denver Sturm College of Law
Denver, CO

for Amici Curiae
Professors Barbara Bergman, Barbara Creel, Rebecca Kitson, and Jennifer Moore and the
National Immigration Project of the National Lawyers Guild


The Appellate Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Amicus Curiae
New Mexico Criminal Defense Lawyers Association

**OPINION**

**CHÁVEZ, Justice.**

**{1}** In *State v. Paredez*, 2004-NMSC-036, ¶ 19, 136 N.M. 533, 101 P.3d 799, we held that a criminal defense attorney who represents a noncitizen client "must advise that client of the specific immigration consequences of pleading guilty" to pending charges. An attorney's failure to do so will be ineffective assistance of counsel if the client is prejudiced. *Id*. Ramirez pleaded guilty in 1997 and now asserts that his attorney did not advise him about any immigration consequences of his pleas. The question in this case is whether our holding in *Paredez* applies retroactively and, if it does, whether Ramirez has a claim for ineffective assistance of counsel that could justify withdrawal of his pleas.

**{2}** We hold that *Paredez* applies retroactively to 1990, the year that this Court began to prohibit courts from accepting a guilty plea from a defendant without fulfilling the following requirements: the court must (1) ascertain that the defendant understood that a conviction may have an effect on the defendant's immigration status; (2) obtain an affidavit from the defendant that the judge personally advised the defendant of the possible effect of a conviction on the defendant's immigration status; and (3) obtain a certification from the defendant's attorney that the attorney had conferred with the defendant and explained in detail the contents of the affidavit signed by the defendant. *See* Form 9-406 NMRA (1990); Rule 5-303(E)(5) NMRA (1990); Rule 6-502(D)(2) NMRA (1990); Rule 7-502(E)(2) NMRA (1990); & Rule 8-502(D)(2) NMRA (1990). These requirements were not new in 1997 at the time Ramirez pleaded guilty, and they were "designed to ensure a guilty plea is made knowingly and voluntarily." *See State v. Garcia*, 1996-NMSC-013, ¶ 8, 121 N.M. 544, 915 P.2d 300 (stating that "New Mexico has long recognized that for a guilty plea to be valid it must be knowing and voluntary").

**BACKGROUND**

**{3}** On January 4, 1997, Martin Ramirez was arrested and charged with possession of up to one ounce of marijuana and two other misdemeanors, contrary to NMSA 1978, Section 30-31-23(B)(1) (1990, amended 2011) (possession of up to one ounce of marijuana); NMSA 1978, Section 30-31-25.1 (1981, amended 2001) (possession of drug paraphernalia); and

NMSA 1978, Section 30-22-3 (1963) (concealing identity), respectively. He appeared in metropolitan court for a custody arraignment two days later and pleaded guilty to all three charges on the advice of his public defender. In 2009, Ramirez learned that his guilty pleas in 1997 rendered him "inadmissible to the United States."[1] Ramirez filed a petition for writ of error coram nobis in the district court, seeking to vacate his metropolitan court guilty pleas on the basis of ineffective assistance of counsel. Ramirez's undisputed contentions are that he first met with his attorney right before his arraignment and that the attorney advised him that if he pleaded guilty to the charges, which he did, his sentence would be to time already served. Also apparently uncontested is Ramirez's assertion that his attorney never advised him about any immigration consequences of his guilty pleas, which was in direct conflict with the requirement that Form 9-406 (1990) be completed by the judge, the defendant, and the defendant's attorney if the defendant was represented by counsel. Form 9-406(9) (1990) required the judge to certify nine facts, including "[t]hat the defendant understands that a conviction may have an effect upon the defendant's immigration or naturalization status." Form 9-406 (1990) also required the defendant as an affiant to certify under oath that the judge had so advised the defendant. Finally, Form 9-406 (1990) required the defendant's attorney to certify "that [the attorney] has conferred with [the attorney's] client with reference to the execution of [the] affidavit and that [the attorney] has explained in detail its contents."

**{4}**      We cannot determine from the record before us whether Form 9-406 (1990) was filed in this case because Ramirez's case files from both the metropolitan court and the public defender department were destroyed prior to the present appeal. Nonetheless, we presume that guilty plea Form 9-406 (1990) was properly utilized. *See Doe v. City of Albuquerque*, 1981-NMCA-049, ¶ 8, 96 N.M. 433, 631 P.2d 728 ("[W]e will indulge all presumptions in favor of the correctness of the procedures in the trial court.").

**{5}**      During the hearing regarding Ramirez's petition to set aside his guilty pleas, Ramirez's counsel stated that had Ramirez known about the immigration consequences of his guilty pleas, "he would not have taken that step at that point." The Court stated that all parties were in agreement regarding Ramirez's contentions, and the State did not disagree. The court accepted as true Ramirez's allegation that he would not have entered guilty pleas

---

[1]The United States Citizenship and Immigration Services (USCIS), which operates under the Department of Homeland Security, sent Ramirez its decision on his application for waiver of grounds of inadmissibility on June 22, 2009. In its decision, USCIS cited Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act (8 U.S.C. § 1182(a)(2)(A)(i)(II)) to inform Ramirez that his pleas of "guilty" to the charges of possession of marijuana and other misdemeanors fell within the scope of immigration and citizenship disqualifications, or inadmissibility. The USCIS decision also explained why the discretionary power of the Attorney General to waive inadmissibility was not granted to Ramirez, despite the fact that he established that he has a child who is a United States citizen, whom he would be forced to leave behind.

in his misdemeanor charges had his attorney advised him of the immigration consequences. However, the court denied Ramirez's writ, reasoning that *Paredez* did not apply retroactively.

**{6}** On appeal, the Court of Appeals held that *Paredez* and its federal corollary, *Padilla v. Kentucky*, 559 U.S. 356, 359-60 (2010) (holding that the Sixth Amendment guarantee of effective assistance of counsel requires a defendant's attorney to advise the defendant that pleading guilty to charges of transporting marijuana would result in deportation), apply retroactively in the State of New Mexico. *State v. Ramirez*, 2012-NMCA-057, ¶ 16, 278 P.3d 569. We granted the State's petition for writ of certiorari. Since we granted the State's petition, the United States Supreme Court filed its opinion in *Chaidez v. United States*, ___ U.S. ___, 133 S. Ct. 1103 (2013), which stated that its holding in *Padilla* should not apply retroactively in federal courts because *Padilla* announced a new rule of criminal procedure. *Id.* at ___, 133 S. Ct. at 1107-08. We decline to follow *Chaidez* and we affirm the Court of Appeals because since 1990, the New Mexico Supreme Court rules and forms have required an attorney to certify having engaged the client in detail in a guilty plea colloquy that included immigration consequences. Because the requirements that Form 9-406 imposes are not new in New Mexico, our holding in *Paredez* imposing requirements that were effective in 1990 applies retroactively to 1990, the adoption date of the Form 9-406 amendment that required a defendant to understand the possible immigration consequences of a plea conviction.

**DISCUSSION**

**{7}** In *Paredez*, we held that criminal defense attorneys must determine the immigration status of their clients and must advise the client who is not a United States citizen specifically regarding the immigration consequences of a guilty plea, including whether the guilty plea is virtually certain to result in the client's deportation. 2004-NMSC-036, ¶ 19. Three key reasons motivated our holding. First, "[d]eportation can often be the harshest consequence of a non-citizen criminal defendant's guilty plea, so that 'in many misdemeanor and low-level felony cases . . . [he or she] is usually much more concerned about immigration consequences than about the term of imprisonment.'" *Id.* ¶ 18 (second alteration and omission in original) (quoting Jennifer Welch, Comment, *Defending Against Deportation: Equipping Public Defenders to Represent Noncitizens Effectively*, 92 Cal. L. Rev. 541, 545 (2004)). Second, "requiring . . . such advice is consistent with the spirit of [the 1992 predecessor to Rule 5-303(E)(5)], which prohibits the district court from accepting a guilty plea without first determining that the defendant has an understanding of the immigration consequences of the plea." *Paredez*, 2004-NMSC-036, ¶ 19. Forms 9-406 (applicable to the district courts) and 9-406A NMRA (applicable to magistrate, metropolitan, and municipal courts) are used in New Mexico courts in the course of accepting a guilty plea. *See* Rules 5-303(E)(5), 6-502(D)(2), 7-502(E)(2), & 8-502(D)(2) (predicating acceptance of a guilty plea by a district, magistrate, metropolitan, or municipal court, respectively, on that court's colloquy with the defendant directly, assuring the defendant's understanding of the immigration consequences of the plea). Third, a noncitizen defendant's

3

knowing and voluntary guilty plea depends upon that defendant having received proper advice regarding the immigration consequences of the plea. *Paredez*, 2004-NMSC-036, ¶ 19.

**{8}** In *Paredez*, we also explained what would constitute deficient advice, and therefore ineffective assistance of counsel. *See id.* ¶¶ 13-14; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that to establish ineffective assistance of counsel, a defendant must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense"). Advising a client that deportation is not a consequence when deportation is a possibility, advising the client that deportation is only a possibility when it is a virtual certainty, or failing to give the client any advice at all regarding immigration consequences all constitute evidence of deficient advice that could satisfy the first prong for ineffective assistance of counsel. *Paredez*, 2004-NMSC-036, ¶¶ 15-16. Proof that the defendant would not have pleaded guilty except for the deficient advice demonstrates prejudice. *See id.* ¶ 20. If the defendant is prejudiced by the deficient advice, the attorney's representation was ineffective, and the defendant may withdraw the guilty plea. *See id.* ¶ 19.

**{9}** Whether *Paredez* should apply retroactively is an issue of first impression in New Mexico. We review the retroactive application of a judicial opinion de novo. *Kersey v. Hatch*, 2010-NMSC-020, ¶ 14, 148 N.M. 381, 237 P.3d 683.

**{10}** *Chaidez* declined to retroactively apply *Padilla*, *Paredez*'s federal corollary, because *Padilla* represented a "new rule" under the federal analysis formulated in *Teague v. Lane*, 489 U.S. 288, 290-92 (1989) (adopting the view that "new rules [of criminal procedure are] not . . . applicable to those cases that have become final before the new rules were announced"), *holding limited on other grounds by Lockhart v. Fretwell*, 506 U.S. 364, 372-73 (1993). *Chaidez*, ___ U.S. at ___, 133 S. Ct. at 1107-08 ("*Padilla* thus announced a 'new rule.' "). The State concedes that this Court is not required to follow *Chaidez*. *See Danforth v. Minnesota*, 552 U.S. 264, 280-81 (2008) (holding that *Teague* was not intended "to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions").

**{11}** Pursuant to *Teague*, New Mexico does not give retroactive effect to a new criminal procedure rule. *See Kersey*, 2010-NMSC-020, ¶¶ 1, 25. The test determines whether a previously issued judicial opinion introduced a new rule of criminal procedure or merely expanded upon an already established rule. *See id.* Under *Teague*, "new rules generally should not be afforded retroactive effect unless (1) the rule is substantive in nature, in that it alters the range of conduct or the class of persons that the law punishes, or (2) although procedural in nature, the rule announces a watershed rule of criminal procedure." *Kersey*, 2010-NMSC-020, ¶ 25 (internal quotation marks and citations omitted). A "new rule" is one that "breaks new ground or imposes a new obligation on the States . . . [or where] the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* ¶ 16 (internal quotation marks and citations omitted). A rule that is not deemed a "new rule" by this test may apply retroactively.

4

**{12}** Although in *Chaidez* the United States Supreme Court clarifies "that a lawyer who neglects to inform a client about the risk of deportation is professionally incompetent," ___ U.S. at ___, 133 S. Ct. at 1108, the Court held that *Padilla* imposed "a new obligation" on attorneys to counsel their clients about the immigration consequences of their pleas, *id.* at 1110-11 (internal quotation marks and citation omitted). Rule 11 of the Federal Rules of Criminal Procedure governs the taking of guilty pleas. *See* Fed. R. Crim. P. 11. Prior to *Chaidez*, immigration consequences were not part of the plea colloquy under Rule 11(b). However, in 2013, after *Chaidez*, Rule 11 was amended to require the court to "inform the defendant of, and determine that the defendant understands, the following . . . that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O).

**{13}** Unlike the federal system, since 1990 New Mexico has required attorneys in all trial courts to advise their clients of the details of the plea colloquy. Form 9-406 was amended in 1990 to, among other things, require the judge to advise the defendant that a conviction may have an effect on the defendant's immigration status. Form 9-406 (1990), applicable to all New Mexico trial courts, also obligated the attorney to certify having explained the plea colloquy to the client in detail. As it existed after amendment in 1990, and as it appeared in 1997 when Ramirez pleaded guilty, Form 9-406 (which applied to Rules 5-303, 6-502, 7-502, and 8-502) provided:

STATE OF NEW MEXICO            COUNTY OF _____
              IN THE _____ COURT

STATE OF NEW MEXICO

     v.                          No. _____

John Doe

### GUILTY PLEA PROCEEDING

The defendant personally appearing before me, I have ascertained the following facts, noting each by initialing it.

Judge's
Initial

_____ 1. That the defendant understands the charges set forth in the (complaint) (information) (indictment).

_____ 2. That the defendant understands the range of possible sentence for the offenses charged, from a suspended sentence to a maximum of _____.

_____ 3. That the defendant understands the following constitutional rights which the defendant gives up by pleading (guilty) (guilty but mentally ill):

_____ (a) the right to trial by jury, if any;

_____ (b) the right to the assistance of an attorney at all stages of the proceeding, and to an appointed attorney, to be furnished free of charge, if the defendant cannot afford one;

_____ (c) the right to confront the witnesses against him and to cross-examine them as to the truthfulness of their testimony;

_____ (d) the right to present evidence on his own behalf, and to have the state compel witnesses of his choosing to appear and testify;

_____ (e) the right to remain silent and to be presumed innocent until proven guilty beyond a reasonable doubt.

_____ 4. That the defendant wishes to give up the constitutional rights of which the defendant has been advised.

_____ 5. That there exists a basis in fact for believing the defendant is (guilty) (guilty but mentally ill) of the offenses charged and that an independent record for such factual basis has been made.

_____ 6. That the defendant and the prosecutor have entered into a plea agreement and that the defendant understands and consents to its terms. (Indicate "NONE" if a plea agreement has not been signed.)

_____ 7. That the plea is voluntary and not the result of force, threats or promises other than a plea agreement.

_____ 8. That under the circumstances, it is reasonable that the defendant plead (guilty) (guilty but mentally ill).

_____ 9. *That the defendant understands that a conviction may have an effect upon the defendant's immigration or naturalization status.*

On the basis of these findings, I conclude that the defendant knowingly, voluntarily and intelligently pleads (guilty) (guilty but mentally ill) to the above charges and accept such plea. A copy of this affidavit shall be made a part of the record in the above-styled case.

_____        _____
District Judge                                                            Date

6

**CERTIFICATE BY DEFENDANT**

I certify that the judge personally advised me of the matters noted above, that I understand the constitutional rights that I am giving up by pleading (guilty) (guilty but mentally ill) and that I desire to plead (guilty) (guilty but mentally ill) to the charges stated.

_____
Defendant

Subscribed and sworn to
before me this _____
day of _____, 19_____

_____
Clerk, Notary or Other Officer Authorized to Administer Oaths

The undersigned attorney hereby certifies that he has conferred with his client with reference to the execution of this affidavit and that he has explained in detail its contents.

_____
Defense Counsel

[As amended, effective September 1, 1990.]

(Emphasis added.)

**{14}** A rule may be viewed as new if its "result was not dictated by precedent existing at the time the defendant's conviction became final." *Kersey*, 2010-NMSC-020, ¶ 16 (internal quotation marks and citations omitted). The *Chaidez* majority concluded that *Padilla* announced a new rule because until *Padilla* the United States Supreme Court "had declined to decide whether the Sixth Amendment had any relevance to a lawyer's advice about matters not part of a criminal proceeding." *Chaidez*, ___ U.S. at ___, 133 S. Ct. at 1110. However, in 1990 the New Mexico Supreme Court required lawyers to advise their clients about immigration consequences as part of the criminal guilty plea proceeding. *See* Form 9-406 (1990). Our holding today aligns with Justice Sotomayor's dissent in *Chaidez*, where she wrote,

> *Padilla* did nothing more than apply the existing rule of *Strickland* . . . in a new setting, the same way the Court has done repeatedly in the past: by surveying the relevant professional norms and concluding that they unequivocally required attorneys to provide advice about the immigration consequences of a guilty plea.

*Chaidez*, ___ U.S. at ___, 133 S. Ct. at 1114 (Sotomayor, J., dissenting) (internal citation omitted).

**{15}** We surveyed the professional norms relevant in New Mexico, which indicate that

7

counsel was obligated at the time of Ramirez's arraignment and pleas to certify having conferred with Ramirez about the plea affidavit, including potential immigration consequences of a guilty plea. These professional norms were hardly novel, even in 1990. In 1982, the American Bar Association stated the importance of criminal defense attorneys advising clients about the effect a guilty plea might have on immigration consequences. *See* 3 ABA Standards for Criminal Justice 14–3.2 cmt., at 75 (2d ed. 1982). The United States Supreme Court acknowledged ABA Standard 14–3.2 in *Immigration & Naturalization Service v. St. Cyr*, 533 U.S. 289, 323 n.48 (2001) ("[T]he American Bar Association's Standards for Criminal Justice provide that, if a defendant will face deportation as a result of a conviction, defense counsel 'should fully advise the defendant of these consequences.'" (quoting ABA Standard 14–3.2 cmt., at 75)); Donald J. Newman, *Conviction: The Determination of Guilt or Innocence Without Trial*, at 209 (Frank J. Remington ed., 1966) ("Effective counseling regarding the likely consequences of the guilty plea requires the lawyer to have intimate knowledge of sentencing provisions and procedures.").

**{16}** At the time Ramirez entered his guilty pleas, additional immigration-specific and general guidelines existed which counseled defense attorneys on how to competently advise clients regarding immigration consequences. In 1995, the National Legal Aid and Defender Association recognized that "[i]n order to develop an overall negotiation plan, counsel should be fully aware of, and make sure the client is fully aware of: . . . (3) other consequences of conviction such as deportation." National Legal Aid & Defender Association, *Performance Guidelines for Criminal Defense Representation* Guideline 6.2(a)(3) (1995); F. Lee Bailey & Kenneth J. Fishman, *Handling Misdemeanor Cases* § 3.7, at 5-6 (2d ed. 1992) ("In misdemeanor cases, the possible consequences of a conviction may be so drastic that the defendant must take his or her chances on a trial. . . . A convicted alien may be deported.").

**{17}** Although we may have decided to follow the majority opinion in *Chaidez* had we not historically included checks regarding immigration consequences in our guilty plea proceedings, the fact is that the State of New Mexico has had such a requirement since 1990. While there is no record of Form 9-406 (1990) or the corresponding plea colloquy in this case, we have held in other cases where counsel has failed to properly advise a client during the plea entry phase that not even a record of the court's adherence to the plea colloquy cures the ineffective assistance of counsel. *See State v. Hunter*, 2006-NMSC-043, ¶ 29, 140 N.M. 406, 143 P.3d 168 (holding that where a district court "properly conducted the plea hearing, adhering to our rules governing the entry of pleas," that proper plea hearing could not "cure a defect caused by ineffective advice of counsel"). In this case, the presumptive plea colloquy between the court and Ramirez required the court to determine whether Ramirez was aware of the potential immigration consequences of his guilty pleas; and the rule prescribing that determination by the court had existed in that form for seven years preceding Ramirez's arraignment and pleas. We hold today that Ramirez has a viable claim for withdrawal of his 1997 guilty pleas based on ineffective assistance of counsel pursuant to Form 9-406 (1990), which required attorneys to inform their clients in detail of the possible immigration consequences of a guilty plea. We fail to see how our holding in

8

*Paredez*—seven years after Ramirez's pleas and fourteen years after Form 9-406 was amended to require that the trial court assure a defendant's understanding that a guilty plea could affect the defendant's immigration status—announced a new rule.

**CONCLUSION**

**{18}** We affirm the Court of Appeals and remand this case to the district court to allow Ramirez the opportunity to claim ineffective assistance of counsel and seek withdrawal of his guilty pleas.

**{19}  IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Senior Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**