This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-37531

**AMIGOS BRAVOS and GILA
RESOURCES INFORMATION
PROJECT,**

Appellants,

v.

**NEW MEXICO ENVIRONMENT
DEPARTMENT,**

Intervenor,

and

**NEW MEXICO WATER QUALITY
CONTROL COMMISSION,**

Appellee,

**IN THE MATTER OF PROPOSED
AMENDMENTS GROUND AND
SURFACE WATER PROTECTION
REGULATIONS, 20.6.2 NMAC.**

**APPEAL FROM THE WATER QUALITY CONTROL COMMISSION
Erin Anderson, Hearing Officer**

Hector H. Balderas, Attorney General
Santa Fe, NM
John B. Verheul, Special Assistant Attorney General
Albuquerque, NM

for Intervenor New Mexico Environment Department

Hector H. Balderas, Attorney General
Robert F. Sanchez, Assistant Attorney General
Santa Fe, NM

for Appellee Water Quality Control Commission

New Mexico Environmental Law Center
Eric D. Jantz
Douglas Meiklejohn
Charles de Saillan
Santa Fe, NM

for Appellants

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}**     Appellants Amigos Bravos and Gila Resources Information Project challenge amendments to a rule adopted by the New Mexico Water Quality Control Commission (the Commission) and at the request of the New Mexico Environment Department (the Department). Appellants challenge (1) the procedures used to amend the rule, (2) the sufficiency of the evidence supporting the adoption of the amended rule, and (3) the facial validity of the amended rule. Because Appellants make no compelling argument for reversal, we affirm the Commission's decision adopting the amendments.

**BACKGROUND**

**{2}**     The Department petitioned the Commission to amend numerous ground and surface water protection regulations promulgated by the Commission and found within Title 20, Chapter 6, Part 2 of the New Mexico Administrative Code. During the rulemaking proceedings before the Commission, Appellants challenged the Department's proposed amendments to the so-called "variance rule." The Commission ultimately adopted the amendments to the variance rule in a written order and statement of reasons issued on November 8, 2018.

**{3}**     The variance rule, codified at 20.6.2.1210 NMAC, effectuates NMSA 1978, Section 74-6-4(H) (2019)[1] of the Water Quality Act (the WQA), NMSA 1978, §§ 74-6-1 to -17 (1967, as amended through 2019). Section 74-6-4(H) allows the Commission to grant a "variance from any regulation of the [C]ommission whenever it is found that compliance with the regulation will impose an unreasonable burden upon any lawful business, occupation or activity" and provides that "[a]ny variance shall be granted for the period of time specified by the [C]ommission." Prior to the amendments at issue in this case, the variance rule limited variances to five years in duration. 20.6.2.1210(C) NMAC (1/15/2001) ("The [C]ommission shall not grant a variance for a period of time in excess of five years."). The amendments removed this limitation, and Subsection C of the variance rule now provides that "the [C]ommission shall specify the length of time

---

[1]Section 74-6-4 was amended since the rulemaking at issue in this case. *See* § 74-6-4 (2009, amended 2019). Because Subsection H of Section 74-6-4 was not modified in 2019, however, we cite the current version of Section 74-6-4. *Compare* § 74-6-4(H) (2009), *with* § 74-6-4(H) (2019).

that the variance shall be in place." 20.6.2.1210(C) NMAC. The amendments also added a new subsection, Subsection E, to the variance rule, putting in place periodic reporting requirements for holders of variances exceeding five years and setting out procedures related to those reports. 20.6.2.1210(E) NMAC. Appellants appeal the Commission's adoption of the amended variance rule, pursuant to Section 74-6-7(A). Appellants challenge the substance of these amendments, as well as the procedures used to adopt them.

## DISCUSSION

**{4}** This Court may set aside an action by the Commission only if it was "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." Section 74-6-7(B); *accord Gila Res. Info. Project v. N.M. Water Quality Control Comm'n*, 2018-NMSC-025, ¶ 5, 417 P.3d 369. In undertaking our review, we apply a deferential standard:

> An agency's rule-making function involves the exercise of discretion, and a reviewing court will not substitute its judgment for that of the agency on that issue where there is no showing of an abuse of that discretion. Rules and regulations enacted by an agency are presumed valid and will be upheld if reasonably consistent with the statutes that they implement.

*Old Abe Co. v. N.M. Mining Comm'n*, 1995-NMCA-134, ¶ 10, 121 N.M. 83, 908 P.2d 776 (internal quotation marks and citation omitted). Further, "[a] party challenging a rule adopted by an administrative agency has the burden of showing the invalidity of the rule or regulation." *Id.* (internal quotation marks and citation omitted). For the reasons that follow, Appellants have failed to satisfy this burden.

## I.   Procedural Challenges

**{5}** We first address Appellants' contention that the Commission's rulemaking procedures violated the State Rules Act, NMSA 1978, §§ 14-4-1 to -11 (1967, as amended through 2017), as well as Section 74-6-6(D) of the WQA. In particular, Appellants contend the Commission violated Section 14-4-5(D), which provides, in relevant part: "Within fifteen days after adoption of a rule, an agency shall file the adopted rule with the state records administrator or the administrator's designee[.]" Appellants also contend the Commission violated Section 14-4-5.5, which requires an agency, "[a]t the time it adopts [the] rule," to "provide to the public a concise explanatory statement[,]" and Section 74-6-6(D), which requires the Commission to "give[] written notice of the action of the [C]ommission" to any person heard or represented at the hearing. Appellants contend the Commission adopted the amendments on July 10, 2018, because, at a hearing on that date, the Commission purportedly voiced its assent to the amendments.[2] From this, we understand Appellants to argue that because no explanatory statement or notice was provided until the written decision was issued on

---

[2]We question whether this vote occurred on July 10, 2018, because the written decision indicates the Commission approved the amendments at its August 14, 2018, meeting.

November 8, 2018, and because the rule was not filed with the State Records Center until November 21, 2018, the amended variance rule is procedurally unsound.

**{6}** We reject Appellants' claims of procedural error because they are based on an erroneous premise—namely, that the Commission adopted the amended variance rule on July 10, 2018. Instead, according to the rules governing the Commission's rulemaking, "[a]doption of the final rule occurs *upon signature of the written decision*." 20.1.6.307(C) NMAC (emphasis added). In this case, the sixty-eight-page written decision—signed by the chair of the Commission—was issued on November 8, 2018. Because the Commission filed the amended rule with the State Records Center on November 21, 2018—thirteen days after the amended rule was adopted—no violation of Section 14-4-5(D) occurred. As for the alleged violation of Section 14-4-5.5, Appellants do not contend that the November 8, 2018, written decision did not include all the information required by that statute and otherwise fail to explain how the Commission violated Section 14-4-5.5. As for the alleged violation of Section 74-6-6(D), Appellants do not contend they did not receive a copy of the written decision and the certificate of service attached to the decision shows that Appellants were, in fact, served. To the extent Appellants' argument is instead that the Commission "egregiously delayed" issuing a written decision after it purportedly agreed on July 10, 2018, to adopt the amendments, Appellants fail to expound on this assertion and we therefore decline to review it. *See, e.g.*, *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 31, 482 P.3d 1261 ("This Court has no duty to review an argument that is not adequately developed[.]" (internal quotation marks and citation omitted)). For these reasons, we cannot conclude that the Commission committed any procedural violations.

## II.    Substantial Evidence

**{7}** Appellants urge us to set aside the amendments to the variance rule on the grounds that the Commission's decision to adopt them is not supported by substantial evidence. We do not reach the merits of this argument because Appellants fail to comply with our appellate rules.

**{8}** Specifically, Appellants do not comply with Rule 12-318(A)(3) NMRA, which requires that a brief in chief contain "a summary of the facts relevant to the issues presented for review." Although Appellants' brief in chief provides a summary of the procedural history of the rule amendments, it does not set forth the substance of the evidence the Commission relied on to adopt the amendments. Instead, Appellants direct us to twenty-three pages of their docketing statement for a summary of relevant facts.[3]

---

[3]We note that, in the argument section of their brief in chief, Appellants do discuss some of the evidence presented at the rulemaking proceedings. As pointed out by the Commission and left uncontested by Appellants in reply, however, Appellants' presentation omits evidence considered by the Commission that is unfavorable to their position. This, too, is fatal to Appellants' sufficiency challenge. *See Maloof v. San Juan Cnty. Valuation Protests Bd.*, 1992-NMCA-127, ¶¶ 18-19, 114 N.M. 755, 845 P.2d 849 (providing that Rule 12-318(A)(3) "imposes a duty upon an appellant, who seeks to challenge findings adopted below, to marshal all of the evidence *in support* of the findings and then demonstrate that even if the evidence is viewed in a light most favorable to the decision reached below, together with all reasonable

We, however, do not allow parties to incorporate by reference other briefing into their general calendar briefing. *See Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶¶ 4, 16, 19, 115 N.M. 181, 848 P.2d 1108 (deeming the appellant to have waived his right of review to a substantial evidence claim where he attempted to incorporate by reference facts recited during the calendaring process); *cf. State v. Gonzales*, 1991-NMCA-007, ¶ 12, 111 N.M. 590, 808 P.2d 40 ("[I]ssues that are argued by reference to the docketing statement will be deemed abandoned."). Appellants' failure to comply with Rule 12-318(A)(3) greatly impedes our ability to review their substantial evidence claim and amounts to a waiver of this claim of error. *See* Rule 12-318(A)(3) ("A contention that a verdict, judgment, or finding of fact is not supported by substantial evidence shall be deemed waived unless the summary of proceedings includes the substance of the evidence bearing on the proposition[.]"); *see also Martinez*, 1993-NMCA-020, ¶ 16 (highlighting the burdens that improperly fall on the appellate court and opposing party when an appellant fails to properly set forth the facts relevant to a substantial evidence claim). We do not consider Appellants' sufficiency challenge.

## III.    Facial Challenges

{9}    Appellants make various assertions that the amended variance rule on its face violates provisions of the WQA. Our review of such preenforcement challenges is limited—"[u]ntil the new[, challenged] standard has been applied in a fact-specific manner, our review is limited to whether the Commission properly adopted a new [rule] pursuant to its statutory authority" or, instead, as Appellants propose, the new rule conflicts with the WQA. *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 21, 141 N.M. 41, 150 P.3d 991); *see Gila Res. Info. Project*, 2018-NMSC-025, ¶ 6 (framing as the inquiry in a facial challenge to an administrative rule "whether the . . . [r]ule is a permissible exercise of the [rulemaking body]'s statutory authority"); *Old Abe Co.*, 1995-NMCA-134, ¶ 2 (treating the claim that a rule conflicts with an act as an issue "subordinate" to the question of whether an agency's "decision to adopt the [rule] was arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with the law"); *see also* § 14-4-5.7(A) (providing that "[n]o rule is valid or enforceable if it conflicts with statute"). To successfully raise a facial challenge to the amended variance rule, Appellants "must establish that no set of circumstances exist where [the amended variance rule] could be valid." *Gila Res. Info. Project*, 2018-NMSC-025, ¶ 6. Hypothetical or theoretical applications of a rule that might violate a statute are insufficient to meet this burden. *See Old Abe Co.*, 1995-NMCA-134, ¶ 22 (concluding that a hypothetical application of the rule that is not authorized by statute is insufficient to raise a successful facial challenge to the rule); *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-084, ¶ 19, 142 N.M. 200, 164 P.3d 81 ("[The a]ppellants' speculation about hypothetical newly covered waters does not meet their burden of demonstrating the invalidity of the [Commission's] standards.").

---

inferences attendant thereto, the evidence is insufficient to support the findings" and, absent a proper attack, the appellant is bound by those findings (emphasis added)).

**{10}** Appellants contend that both Subsection C and Subsection E of the amended variance rule, each on its face, violate the WQA. Upon examination, none of Appellants' assertions withstand scrutiny.

## A.      Challenges to Subsection C

**{11}** Appellants' first two claims of facial invalidity pertain to the amendments to Subsection C of the variance rule, which removed the five-year limit on the duration of a variance. Subsection C was amended as follows:

> The commission may grant the requested variance, in whole or in part, may grant the variance subject to conditions, or may deny the variance. [The] If the variance is granted in whole or in part, or subject to conditions, the commission shall [not grant a] specify the length of time that the variance [for a period of time in excess of five years.] shall be in place.[4]

*See* 20.6.2.1210(C) NMAC. Appellants argue Subsection C as amended is facially invalid because it (1) conflicts with the WQA's purpose, and (2) violates the WQA's requirement that groundwater pollution be abated within a reasonable period of time.

## 1.      Conflict With the WQA's Purpose

**{12}** Appellants first argue that the removal of the five-year limit on variance duration conflicts with the WQA's purpose "to abate and prevent water pollution." *Bokum Res. Corp. v. N.M. Water Quality Control Comm'n*, 1979-NMSC-090, ¶ 59, 93 N.M. 546, 603 P.2d 285. Appellants direct us to testimony, given by the Department during the rulemaking proceedings, purportedly suggesting that the reason for the change was to permit variances lasting "for the life of a facility." Because, according to Appellants, many facilities regulated by the Commission "operate in perpetuity or for countless decades[,]" a facility *might* be allowed to discharge pollution for over one hundred years. Removal of the five-year variance limit, Appellants argue, thus conflicts with the legislative policy of abating and preventing water pollution. There are two key problems with Appellants' arguments.

**{13}** First, an examination of the amended variance rule and the WQA belie Appellants' contentions. As the Commission and the Department point out, nothing in the amended variance rule allows variances "for the life of a facility." Instead, the amended rule merely removes the five-year limit on variance duration and now reads, in relevant part, that "the [C]ommission *shall specify the length of time* that the variance shall be in place." 20.6.2.1210(C) NMAC (emphasis added). This is in full accordance with the WQA's empowerment of the Commission to grant variances, "*for the period of*

---

4This version of the variance rule is taken from the Commission's rulemaking filing. Text that is bracketed and struck-through existed in the pre-amended rule but was deleted through the amendment process; text that is underlined was added through the amendment process. *Compare* 20.6.2.1210(C) NMAC (1/15/2001), *with* 20.6.2.1210(C) NMAC.

*time specified by the* [*C*]*ommission.*" Section 74-6-4(H) (emphasis added). The WQA does not limit the duration of a given variance, but rather gives the Commission discretion to decide such duration. In removing the five-year limit on the variance rule, the Commission thus plainly acted within its statutory authority under Section 74-6-4(H). *See Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 23, 288 P.3d 902 (providing that the board "did not act contrary to its statutory authority in approving the [new r]egulations that are in harmony with the [a]ct").

**{14}** Second, that Appellants can come up with a theoretical situation where the application of the amended variance rule might conflict with the WQA's purpose to abate and prevent water pollution is, as stated, insufficient to establish the facial invalidity of the rule. *See Old Abe Co.*, 1995-NMCA-134, ¶ 22 (holding that, although a rule might theoretically be interpreted as outside the authority of the statute, such is insufficient to invalidate a regulation on its face and "we will presume that the rule will not be interpreted in a manner contrary to the [statute]"). Appellants have, in short, failed to establish that the amended variance rule, *on its face*, conflicts with the WQA's stated purpose or is otherwise outside the Commission's statutory authority.

## 2.      Conflict With the WQA's Requirement That Groundwater Pollution Be Abated Within a "Reasonable Period of Time"

**{15}** Appellants alternatively argue that the amendment to Subsection C violates the WQA's requirement that a variance be "conditioned upon a person effecting a particular abatement of water pollution within a reasonable period of time." Section 74-6-4(H). According to Appellants, "a reasonable period of time" necessarily means five years. We disagree.

**{16}** As we understand it, Appellants make two related arguments: (1) variances are always linked to discharge permits, and (2) because of this, Section 74-6-4(H)'s "reasonable period of time" requirement must be read "harmoniously" with Section 74-6-5(I), which limits discharge permits to five years in most circumstances.[5] Appellants' argument fails both on the facts and the law. As a factual matter, Appellants would have us believe that a variance is *always* tethered to a discharge permit, contending that "[t]he Commission has historically required [the Department] to incorporate conditions and requirements of an approved variance into the associated discharge permit." But, as the Department points out, the Commission heard evidence that a variance is not necessarily linked to a discharge permit. *Cf. N.M. Mining Ass'n*, 2007-NMCA-010, ¶ 30 ("This Court reviews the record as a whole, in the light most favorable to the decision of the Commission, and refrains from reweighing the evidence." (citation omitted)). Not only do Appellants not contest the Department's assertion in reply, but they acknowledge in their brief in chief that there are circumstances, even if "very limited," in

---

[5]Appellants ignore the fact that new discharge permits may be issued for a duration exceeding five years. *See* § 74-6-5(I) ("[Discharge p]ermits shall be issued for fixed terms not to exceed five years, *except* that for new discharges, the term of the permit shall commence on the date the discharge begins, but in no event shall the term of the permit exceed seven years from the date the permit was issued." (emphasis added)).

which a facility regulated by the Commission may be exempt from obtaining a discharge permit. Indeed, the Commission, by statute, may grant a "variance from *any* regulation." Section 74-6-4(H) (emphasis added). Appellants do not contend that *every* regulation promulgated by the Commission pertains to discharge permits.

**{17}** As a legal matter, we reject Appellant's argument that a variance is statutorily limited to the five-year duration for discharge permits. As Appellants recognize in their brief in chief, "the [WQA] does not expressly limit variances to five years under Section 74-6-4(H)." Although the Legislature has chosen by statute to limit the duration of discharge permits, it specifically has reserved the duration of variances to the Commission's discretion. *Compare* § 74-6-5(I) ("[Renewed discharge p]ermits shall be issued for fixed terms not to exceed five years[.]"), *with* § 74-6-4(H) ("Any variance shall be granted for the period of time specified by the [C]ommission."). Other than their unsupported assertion that variances always are linked to discharge permits, Appellants make no argument why the plain language of Section 74-6-4(H) should not be given effect. *See, e.g.*, *Wood v. N.M. Educ. Ret. Bd.*, 2011-NMCA-020, ¶ 16, 149 N.M. 455, 250 P.3d 881 ("[O]nly where a plain language analysis does not provide a clear interpretation can we look to other statutes in pari materia in order to determine legislative intent." (internal quotation marks and citation omitted)). In absence of this or any other compelling reason to depart from the plain language of the WQA, we decline to impose by judicial edict, as Appellants invite us to do, Section 74-6-5(I)'s five-year limit for discharge permits on Section 74-6-4(H)'s "reasonable period of time" requirement for variances. *See Pueblo of Picuris v. N.M. Energy, Mins. & Nat. Res. Dep't*, 2001-NMCA-084, ¶ 14, 131 N.M. 166, 33 P.3d 916 ("In the absence of contrary evidence, we assume that the [L]egislature used specific language for a reason, and that it had a purpose in preferring a specific course of action with regard to a certain issue or remedy.").

**{18}** In sum, Appellants have failed to establish that the amended variance rule, on its face, conflicts with the WQA's requirement that groundwater pollution be abated within a reasonable period of time or is otherwise outside the Commission's statutory authority.

### B.    Challenges to Subsection E

**{19}** Appellants next challenge the newly promulgated Subsection E of the variance rule, which reads:

> For variances granted for a period in excess of five years, the petitioner shall provide to the [D]epartment for review a variance compliance report at five year intervals to demonstrate that the conditions of the variance are being met, including notification of any changed circumstances or newly-discovered facts that are material to the variance. At such time as the [D]epartment determines the report is administratively complete, the [D]epartment shall post the report on its website, and mail or e-mail notice of its availability to those persons on a general and facility-specific list maintained by the [D]epartment who have requested notice of discharge

permit applications, and any person who participated in the variance process. If such conditions are not being met, or there is evidence indicating changed circumstances or newly-discovered facts or conditions that were unknown at the time the variance was initially granted, any person, including the [D]epartment, may request a hearing before the [C]ommission to revoke, modify, or otherwise reconsider the variance within 90 days of the issuance of the notice of availability of the report.

20.6.2.1210(E) NMAC. Appellants contend Subsection E is facially invalid because it (1) violates the WQA's public participation requirements, and (2) improperly delegates the Commission's authority to the Department.

## 1.    Conflict With the WQA's Public Participation Requirements

{20}    Appellants first challenge Subsection E on the grounds that the periodic compliance reports required by it violate the WQA's demand "for the holding of a public hearing before any variance may be granted[.]" Section 74-6-4(H). Appellants contend, without citation to authority or any compelling argument, that Section 74-6-4(H) means that a public hearing must be held, not only for the initial grant of a variance, but also for any "petition to continue, renew or extend a variance." Appellants then contend—again without citation to any authority or compelling argument—that the compliance reports required by Subsection E are "the functional equivalent" of such petitions. Thus, argue Appellants, because a public hearing is not required upon the submission of a compliance report, Subsection E runs afoul of Section 74-6-4(H).

{21}    We disagree with Appellants because, under the plain language of Section 74-6-4(H), a public hearing must be held only before the *grant* of a variance—the duration of which is left to the Commission's discretion. *See Gila Res. Info. Project*, 2018-NMSC-025, ¶ 25 (rejecting the argument that a rule was facially invalid because the argument did not "flow[] from the plain language of" the relevant statute); *see also Old Abe Co.*, 1995-NMCA-134, ¶ 10 ("Rules and regulations enacted by an agency are presumed valid and will be upheld if reasonably consistent with the statutes that they implement." (internal quotation marks and citation omitted)). The purpose of a compliance report under Subsection E is *not* to assist the Commission in deciding whether to grant a variance in the first instance; instead, it is to assist the Commission, upon request, in determining whether "to revoke, modify, or otherwise reconsider" a variance that already has been granted after the holding of a public hearing.[6] 20.6.2.1210(E) NMAC. We detect no conflict between the amended variance rule and Section 74-6-4(H)'s requirement that the Commission hold a public hearing before granting a variance, and we are not persuaded by Appellants' unsupported and undeveloped contention that a compliance report is the "functional equivalent of a petition to continue, renew or extend a variance." *See Premier Tr. of Nev., Inc.*, 2021-NMCA-004, ¶ 31.

---

6Even then, Subsection E of the amended variance rule provides that a decision to revoke, modify, or otherwise reconsider a variance will be made at a public hearing if requested by "any person." 20.6.2.1210(E) NMAC.

**{22}** Appellants additionally argue that the amended variance rule will otherwise "chill" or "limit" public participation. In making this argument, Appellants highlight what they consider deficiencies of the newly promulgated Subsection E. These contentions include that, under the amended variance rule: (1) the Department is tasked merely with "conduct[ing] an administrative completeness review of a variance holder's . . . compliance report"; (2) "the variance holder [may] select what information it will provide in the . . . compliance report"; (3) "[a] variance holder has . . . unlimited discretion to determine what it considers to be a new fact or changed circumstance"; and (4) "the . . . report is now the basis for the public to determine compliance [with the variance] and whether a request for a public hearing should be made."

**{23}** Appellants, however, do not contend that Subsection E violates any statutory provision besides the "public hearing" provision of Section 74-6-4(H). Since we already have rejected the argument that Subsection E contravenes Section 74-6-4(H), that leaves the remainder of Appellants' argument bare of a claim that the amended variance rule violates the WQA or that the Commission in some way acted outside its statutory authority.[7] *See Gila Res. Info. Project*, 2018-NMSC-025, ¶ 6. In absence of this, Appellants' arguments appear to challenge the policy decisions of the Commission. Our role as an appellate court, however, does not involve substituting our policy judgments for those made by administrative agencies within the scope of their authority, and we thus do not entertain arguments of the nature Appellants advance. *See id.* ¶ 67 ("An agency is always free to change its policy, as long as it announces a policy that is within the range permitted by the Legislature, uses a procedure the Legislature has authorized it to use to make binding policy decisions, and explains the reasons for its change in policy." (alterations, internal quotation marks, and citation omitted)); *Earthworks' Oil & Gas Accountability Project v. N.M. Oil Conservation Comm'n*, 2016-NMCA-055, ¶ 15, 374 P.3d 710 ("It is not the function of a court acting in an appellate capacity to . . . substitute its judgment for that of an administrative agency."). Appellants

---

7At one point in their brief in chief, Appellants broadly assert that "[t]he . . . [WQA] and its implementing regulations are replete with references to public input." But other than a cursory reference to Section 74-6-4(H), Appellants do not direct us or the appellees to any such statutory or regulatory provisions. In their reply brief, however, Appellants greatly expand on their argument and discuss numerous statutes and regulations that they did not cite in their brief in chief. Given this, both the Commission and the Department moved to strike Appellants' reply brief. Upon our review, we conclude that Appellants essentially make an entirely new argument pertaining to their claim that Subsection E violates the public participation requirements imposed by the WQA and Appellants' argument in reply is not solely addressed to any contention either appellee made in their answer briefs. *See* Rule 12-318(C) (providing that a "reply brief . . . shall reply *only* to arguments or authorities presented in the answer brief" (emphasis added)). While we deny the motions and do not strike Appellants' reply brief, we do not consider any new arguments Appellants make in that brief. *See, e.g.*, *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 36, 145 N.M. 186, 195 P.3d 353 ("[W]e do not consider arguments raised in a reply brief for the first time."); *see also Doe v. City of Albuquerque*, 1981-NMCA-049, ¶ 8, 96 N.M. 433, 631 P.2d 728 (explaining that claims of error "not properly briefed or argued [in the brief in chief] will not be considered" when the appellant waits for the reply brief to make a thorough presentation). This includes not only Appellants' new arguments pertaining to the public participation issue discussed in this section, but also their new argument that the amended variance rule "effectively shift[s] the burden of proof on variance extensions."

thus fail to persuade us that Subsection E of the amended variance rule violates any public participation requirements mandated by the Legislature.

## 2.      Unlawful Delegation of Authority

{24}    Finally, Appellants argue Subsection E of the amended variance rule exceeds the Commission's authority under the WQA because, according to them, the Commission unlawfully delegated its authority to the Department to "review and approve" variances. Appellants' argument is grounded in their contention that, "[u]nder the new rule, [the Department] will conduct a five-year variance compliance review and determine whether a variance issued longer than five years should be continued, extended, or renewed."

{25}    Before we turn to the substance of Appellants' argument, we pause to express our puzzlement that Appellants make this argument at all in light of other statements in their brief in chief. In particular, Appellants, prior to advancing this argument, acknowledged that "[t]he new variance rule merely requires [the Department] to conduct *an administrative completeness review* of a . . . compliance report[.]" (Emphasis added.) Appellants' assessment of the amended variance rule at this point in their briefing was correct. Under Subsection E, the Department's "review" of a compliance report is not at all substantive, but, instead, is wholly ministerial—requiring the Department merely to "determine[] the report [to be] administratively complete." 20.6.2.1210(E) NMAC. Once the Department makes this determination, it is required simply to publish the report and otherwise provide notice to interested parties. *Id.* Any person may then "request a hearing before *the* [*C*]*ommission*" so that it may determine whether "to revoke, modify, or otherwise reconsider the variance[.]" *Id.* (emphasis added). In short, nothing in Subsection E supports Appellants' argument that the Commission unlawfully delegates to the Department its authority to "review and approve" variances.

## CONCLUSION

{26}    Appellants have not persuaded us that the procedures used to adopt the amendments to the variance rule were unsound, that the decision to adopt them is not supported by substantial evidence, or that the amended variance rule is facially invalid. Accordingly, we affirm the Commission's decision to adopt the amendments to the variance rule.

{27}    IT IS SO ORDERED.

JENNIFER L. ATTREP, Judge

WE CONCUR:

MEGAN P. DUFFY, Judge

ZACHARY A. IVES, Judge